## No. 22261.

W. L. HOUSER *v.* WILBERT W. ECKHARDT.

(450 P.2d 664)

Decided February 17, 1969.    Rehearing denied March 10, 1969.

MARCH, MARCH & SULLIVAN, JOHN DAVID SULLIVAN, for plaintiff in error.

ALDEN T. HILL, RALPH H. COYTE, ALDEN V. HILL, for defendant in error.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

PLAINTIFF in error, W. L. Houser, was plaintiff and defendant in error, Wilbert W. Eckhardt, was defendant in the trial court. They will be referred to as "plaintiff" and "defendant" respectively herein.

Plaintiff's claim for relief is based upon negligence which defendant generally denied. Defendant alleged the affirmative defense of contributory negligence. After trial a defendant's verdict was returned by the jury. Plaintiff's motion for a new trial was denied and the cause is here on writ of error.

Plaintiff's claim arises out of a rear-end auto collision

which occurred on August 29, 1962 on Highway No. 14 in Larimer County, Colorado, about twenty-five miles northwest of Fort Collins. Plaintiff, his wife and their three children had been on a camping trip in Wyoming and Colorado and were returning over Poudre Pass, proceeding easterly in their station wagon toward Fort Collins en route to their home in Wichita, Kansas. It was late in the afternoon, though still daylight, when the accident occurred. As plaintiff's car was approaching the vicinity of the Ansil Watrous Campground, going down a slight grade and around a broad curve, plaintiff noticed a small red sports convertible stopped on the right side of the roadway, parked off the side of the paved portion of the highway, headed easterly. Two young men with cameras, one of whom was standing up in the convertible and the other alongside on the pavement, were taking pictures of objects in the roadway, which plaintiff upon drawing closer to the area noticed were wild birds. On the opposite side of the road was a car headed westerly, driven by one Margaret Michaelson, who testified that as she was driving westerly she also observed the parked sports car and the men taking pictures of the birds crossing the road. The Michaelson car came to a stop a bit east of the convertible and was parked partially on the pavement, from which position Mrs. Michaelson watched the proceedings. For some unexplained reason the left turn signal of the Michaelson car was in operation as she parked along the road.

Plaintiff was driving about thirty-five miles an hour and, upon surveying the scene above described, out of caution began to slow his vehicle by pumping his brakes. Although he decreased his speed rapidly, he did not skid his vehicle nor come to a stop. When he reached the location of the convertible, he estimated his speed to be between five and ten miles per hour. When about opposite the site of the birds, without warning of any kind, plaintiff's auto was struck from the rear by defen-

dant's truck with such force that it was propelled down the highway approximately one hundred to one hundred fifty feet, over and across a bridge where plaintiff was able to gain control and pull off the road. The force of the impact was sufficient to tear the divided front seats of plaintiff's car loose from their floor mountings. These seats were occupied by plaintiff and his wife who were wearing seat belts. Further indication of the force of the impact was the extensive damage to the back of plaintiff's car of over $700.

Plaintiff's brake lights were in operation and defendant admitted seeing the brake lights operating prior to the collision. Defendant stated that as he came around the bend in the road he saw the sports convertible parked on the right side of the road and the Michaelson car on the left side with its blinker light flashing. At that time defendant was approximately one hundred feet behind plaintiff's car. He stated he glanced toward the sports car to see what was happening and when he turned his attention back to plaintiff's car he was about sixty-five or seventy feet behind plaintiff's car which was slowing down. He stated he could not turn off to the right because of the convertible, or to the left because of the Michaelson car and, being unable to stop, collided with the rear of plaintiff's car. Defendant's explanation for the accident was that plaintiff was stopping so quickly that he could not avoid striking him from the rear. It is noted that at no time did plaintiff's car come to a stop, but at the time of collision was moving between five and ten miles per hour.

Plaintiff's claim for relief sought damages for personal injuries, medical and hospital bills, damages for pain and suffering, loss of earnings, for permanent disability, and property damages to his automobile and contents.

Relating to the claim for personal injuries, the evidence established that plaintiff suffered painful injuries to his neck and back. He was treated by five doctors,

all of Wichita, for a period of approximately two and a half years. In 1965 he was hospitalized and placed in traction for a period of one week. Plaintiff's treatment consisted primarily of medications, injections, physical therapy, diathermy and ultra-sonic sound treatment. Plaintiff complained of continuing aches and pains in his lower back, radiating into his left hip, leg and foot, and to limitation of movements in this part of the body. A back corset brace was prescribed and worn for about a year.

Plaintiff was examined by Dr. Collopy, an orthopedic surgeon, for the purpose of evaluation and testimony but not for treatment. Likewise, plaintiff was examined on behalf of the defense by Dr. Arford, an orthopedic surgeon, for the purpose of evaluation and testimony but not for treatment.

■ We will first discuss the propriety of instruction No. 3 which set forth the statutorily prescribed method of giving hand and arm signals upon stopping or suddenly slowing a vehicle. C.R.S. 1963, 13-5-50 (1) (a), (b), (c), (d). Plaintiff objected to the giving of this part of instruction No. 3 for the reason that there was no issue concerning the necessity of giving a hand and arm signal. Instruction No. 3 contained the statutes relating to following too closely, when signal required on stopping or decreasing speed, and signals to be given either by hand or signal device. C.R.S. 1963, 13-5-49, permits the driver of a vehicle stopping or suddenly decreasing speed the option of giving either a hand and arm signal or a signal by a signal lamp. There was no issue of fact concerning plaintiff's giving a proper signal, the undisputed evidence being that a brake light signal was given by plaintiff, which was in fact seen by defendant. Under these circumstances, instructing the jury concerning the method of giving hand and arm signals opened the door to confusion.

■ An instruction should not be given which creates an issue of fact not supported by the evidence or which

tends to mislead or divert the minds of the jury from the real factual issues. *Mayer v. Sampson*, 157 Colo. 278, 402 P.2d 185; *Piper v. Mayer*, 145 Colo. 391, 360 P.2d 433; *Daly v. Lininger*, 87 Colo. 401, 288 P. 633. See also 53 Am. Jur. *Trial* § 574.

It was error for the court to give that portion of instruction No. 3 relating to the method of giving hand and arm signals as above discussed. The judgment must be reversed. However, we deem it important to discuss the court's ruling on exclusion of expert testimony, inasmuch as the cause will be remanded for a new trial.

Plaintiff contends the trial court erred in excluding testimony of two qualified orthopedic surgeons for the reason that their examinations of plaintiff were made solely for the purpose of evaluation and testimony, and not for treatment, thereby rendering their testimony incompetent. Plaintiff called Dr. Collopy, orthopedic surgeon, for the purpose of evaluating plaintiff's injuries. After qualifying this doctor as an expert in his field, he was asked concerning the history related to him by the plaintiff. Defendant objected and an *in camera* hearing was held. It was brought out that Dr. Collopy examined plaintiff on February 18, 1964 and on January 10, 1966, for trial purposes. Dr. Collopy observed one very definite objective finding consisting of an atrophy of the left thigh from which it could be concluded plaintiff had in fact suffered injury. The doctor's other findings were essentially subjective, based upon the history of the accident and the complaints as stated to him by the plaintiff. The court sustained defendant's objection to this expert testimony, commenting in effect that the statements relating to the patient's history and complaint were self-serving and not to be relied upon. The court's ruling precluded Dr. Collopy from testifying to the history of the accident; to plaintiff's complaints; to the doctor's subjective findings; and to his diagnosis of injury or prognosis for the future. The same rule was imposed as to the deposition of Dr. Anderson, an ortho-

232

pedic surgeon practicing in Wichita, Kansas, whose two examinations of plaintiff were made in April of 1964. Although plaintiff did not initially visit Dr. Anderson for treatment purposes, the doctor did prescribe and supervise therapy treatment for plaintiff.

Oddly enough, the court permitted the defendant's expert orthopedic surgeon, who was not a treating physician, to testify to the same matters that were objected to by the defendant and barred by the court concerning Drs. Collopy and Anderson's tendered testimony. Thus, defendant's expert was permitted to state his opinion, minimizing plaintiff's claimed injuries, but plaintiff's experts were denied the similar right to state their opinions concerning the extent of plaintiff's injuries.

We hold that the court erred in rejecting the testimony of plaintiff's orthopedic experts and that the plaintiff was substantially prejudiced thereby. The court believed that the history and statements of complaint given the examining physicians (who were employed for the purpose of evaluating the injury and testifying only, and not for treatment) would necessarily be self-serving, unreliable and untrustworthy, and would therefore constitute an unsound basis on which to predicate a valid opinion concerning plaintiff's injuries, thus rendering the opinion incompetent.

This limited viewpoint ignores the realities of modern medical knowledge, the application of which readily permits detection of malingering. Likewise, it demeans the integrity of the highly trained medical specialist who puts his reputation on the line when he expresses an opinion on such matters in court. And, furthermore, it deprives the court and jury of the valuable assistance that such testimony affords in understanding the nature and extent of the claimant's injuries. The safeguards of cross-examination of not only the medical expert but also of the claimant and his other witnesses, concerning the truth or falsity of all phases of his claim for relief,

afford ample protection against the imposition of unjust liability upon a defendant.

■ We take the view that the reasons advanced by the court for not admitting plaintiff's expert medical testimony affect only the credibility and weight of such evidence and not its competency.

"2. The rule prevails generally that expert witnesses may testify to the information upon which they have relied in reaching their conclusions, and in respect to medical witnesses this practice would permit the doctor to give a general account not only of facts observed, but of the 'history' including the patient's statements as to injury, past symptoms, and present feelings as of the time of the examination. When presented for this purpose, the statements are not evidence of the matters stated, and hence not hearsay, but are merely explanatory of the opinion, enabling the jury to weigh it in the light of its basis. Most courts make no distinction, in respect to using the 'history' as grounds of opinion between doctors who attended for treatment and those who examined the patient only to prepare themselves to testify. A few courts, however, have held or intimated that these latter experts may not recount what the patient has told them, even for the non-hearsay purpose of explaining the grounds of opinion. * * * " C. Mc-Cormick, Law of Evidence § 267 [and cases therein cited].

■ We hold as a rule of evidence that a properly qualified medical expert who has examined a claimant for the purpose of evaluating the nature and extent of his injuries, and whose employment was for the purpose of testifying in court and not for the purpose of treatment, may testify to his opinion based upon reasonable medical probability as to the nature and extent of claimant's injuries and disabilities and to other related matters when, as here, the expert's opinion is based upon the claimant's statement of history and complaints and upon subjective symptoms and findings as well as

objective symptoms and findings. Such opinions are competent evidence; their weight is for the trier of fact.

In view of our rulings above, it is not necessary to discuss the other alleged errors.

The judgment is reversed and the cause remanded for a new trial consonant with the views expressed herein.

MR. JUSTICE GROVES specially concurs.

MR. CHIEF JUSTICE MCWILLIAMS dissents.

MR. JUSTICE GROVES specially concurring:

Instruction No. 3 set forth the provisions of the following sections in C.R.S. 1963, 13-5:

§ 44, which relates to following too closely;

§ 48(3), which provides that the signal given on sudden decrease of speed should be in the manner provided in § 49 and § 50;

§ 49, which provides that the signals referred to in § 48 may be given by hand and arm as provided in § 50 or by signal lamp or signal device;

§ 50, which provides that the signal on stop or decreased speed shall be with hand and arm extended downward. The instruction ended with a statement that violation of "any of the above statutes by either party of this suit would constitute negligence per se * * *."

I think there was no error in instructing the jury as to the law set forth in these sections and, in any event, this would not be prejudicial to the plaintiff. However, I think it was error, after quoting the method of giving a hand and arm signal as prescribed by statute, to instruct that violation of "any of the above statutes" would constitute negligence as a matter of law. I can perceive that a jury might conclude from this that the judge was instructing them that there was a statutory duty upon the plaintiff to give a hand and arm signal. As the plaintiff's brake lights were on and observed by the defendant, an instruction containing the provisions

of § 48, § 49 and § 50 should not have had the "negligence *per se*" provision.

Therefore, while disagreeing with the majority view that there was error in advising the jury of the provisions of § 50, I concur in the result.

Mr. CHIEF JUSTICE McWILLIAMS dissenting:

I perceive no prejudicial error in the giving of instruction number 3. Certainly the jury was entitled to be informed as to the nature and extent of the duty which is imposed by statute on a driver who stops or suddenly decreases his speed on the open roadway. Instruction number 3 advises the jury that such a driver must either exhibit brake lights *OR* give an appropriate hand signal. It would seem to me that it would be to the definite advantage of the plaintiffs to have the jury instructed that the applicable statute does *not* require a hand signal *if* brake lights are exhibited. And this was the effect of instruction number 3.

Furthermore, the defect perceived by Mr. Justice Groves in instruction number 3 does not strike me as being of sufficient import to require a second trial of this matter. At least we know that upon trial experienced counsel for the plaintiff did not object to instruction number 3 on the particular ground upon which Mr. Justice Groves specially concurs in the majority opinion.