## No. 27916

## The People of the State of Colorado v. Kathleen Maria Parks

(579 P.2d 76)

Decided May 8, 1978.

Paul Q. Beacom, District Attorney, Special Prosecutor, Kathryn Hawks, Deputy, Marc P. Mishkin, Deputy, for plaintiff-appellant.

Robert E. Barker, for defendant-appellee.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The People bring this interlocutory appeal to challenge the trial court's order suppressing certain statements made by the appellee. We affirm the suppression order.

On December 22, 1975, the appellee was arrested on suspicion of using illegally-obtained checks and credit cards, and was charged with forgery, theft, and conspiracy. After being taken to the Arapahoe County Sheriff's Department, the appellee was advised, both orally and in writing, of her *Miranda*[1] rights. She signed a written waiver of those rights, and then made incriminating statements which were subsequently reduced to writing.

On August 26, 1977, a hearing was held on the appellee's motion to suppress those statements. The arresting officer testified that the appellee had been warned of her rights and had waived them, and that her physical and mental condition had appeared normal for a person under arrest. He stated that the appellee had never asked to call or see her lawyer before making her statement. He denied the appellee's contention that he had told her that "things would go easier" for her if she cooperated and made a statement.

The appellee testified that prior to her arrest she already had been in a state of anxiety because of personal circumstances, and the added stress of being arrested made her "distraught." She stated that while the police were questioning her, she was worried about being away from her five children for an extended time. Although she testified that she couldn't remember much of what had happened that evening, the appellee specifically stated that she had asked to call her lawyer and her home, but had been told that she would be allowed to make those calls after she made a statement.

At defense counsel's request, the suppression hearing was then continued in order to obtain the testimony of a doctor who, counsel thought, might have treated the appellee at the jail. When the hearing resumed on November 11, 1977, that doctor was not available, but the defense produced Dr. Yost, a psychiatrist. Dr. Yost had been retained by defense counsel after the August hearing for the purpose of examining the appellee and testifying as to her mental condition at the time she made the statement at issue. He testified, over objection, that after interviewing and examining the appellee, and hearing her relate the details of her arrest and subsequent events, he was of the opinion that at the time of her arrest the appellee was suffering from an "anxiety reaction" which probably reduced or impaired her ability to make a voluntary confession. Dr. Yost further stated that in his opinion the appellee's state of mind — including her anxiety condition and her concern about returning to her children — made her particularly susceptible to suggestion and willing to do anything to relieve her stress.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The trial court, on the basis of the testimony at both hearings, concluded that the appellee's statements had not been made freely or voluntarily, and therefore they would not be admissible at trial.

In this appeal, the People raise two questions: (1) whether the trial court erred in admitting and considering the testimony of Dr. Yost; and (2) whether the trial court erred in ruling that the appellee's statements were in fact involuntary. We address these issues in the order stated.

## I. *Admissibility of Expert Opinion.*

■ In determining the voluntariness of a defendant's statement or confession, a trial court must assess the totality of the circumstances, including details of the interrogation and conduct and characteristics of the defendant. *Duncan v. People,* 178 Colo. 314, 497 P.2d 1029 (1972); *Billings v. People,* 171 Colo. 236, 466 P.2d 474 (1970).

■ Although not necessarily determinative on the issue of voluntariness, the defendant's mental condition is a material factor to be taken into consideration, for that condition may bear on suggestibility or susceptibility to intimidation. *Oaks v. Patterson,* 278 F. Supp. 703 (D. Colo. 1968), *aff'd* 400 F.2d 392 (10th Cir. 1968); *Ingles v. People,* 92 Colo. 518, 22 P.2d 1109 (1933). *See also Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); *Reck v. Pate,* 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); *Blackburn v. Alabama,* 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); *Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958); *Fikes v. Alabama,* 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957). *See generally J. Cook, Constitutional Rights of the Accused: Trial Rights* §72 (1974).

■ Consequently, expert psychiatric testimony regarding the defendant's mental ability to make free and intelligent decisions at the time of his or her arrest is generally relevant to the issues before the court. *See, e.g., Blackburn v. Alabama, supra; Fikes v. Alabama, supra; United States ex rel. Adams v. Bensinger,* 507 F.2d 390 (7th Cir. 1974), *cert. den.* 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 789; *Eisen v. Picard,* 452 F.2d 860 (1st Cir. 1971), *cert. den.* 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338.

Here, however, the People raise several questions regarding the relevance and competence of Dr. Yost's testimony under the particular facts of this case: First, they point out that Dr. Yost was employed, not to treat the appellee, but solely for the purpose of performing an examination to establish a basis for testimony at the suppression hearing. Second, they contend that the purported psychiatric examination was simply an "interview" in which the appellee related her subjective account of the incident and her personal history, and that no "objective" psychiatric tests were performed. In a related argument, the People object, on hearsay grounds, to the trial court's decision to allow Dr. Yost to recount the history related

to him by the appellee and to state an opinion based on that history. Finally, the People argue that Dr. Yost's examination of the appellee, approximately twenty-two months after her arrest, was too remote in time from the relevant events to enable him to draw any valid conclusions regarding her mental condition at that time. We have concluded that these factors were not sufficient either individually or in combination, to justify our holding as a matter of law that the trial court abused its discretion in admitting Dr. Yost's testimony.

In ruling on the admissibility of opinion testimony, the trial court has broad discretion, and absent an abuse of that discretion its rulings will not be disturbed on appeal. *People v. Jiminez,* 187 Colo. 97, 528 P.2d 913 (1974). We find no abuse of discretion in admitting Dr. Yost's testimony in this case.

This court has previously recognized the competence and admissibility of opinion testimony from medical experts employed solely to examine and testify in *civil* cases. *Houser v. Eckhardt,* 168 Colo. 226, 450 P.2d 664 (1969). The rationale of that rule applies equally to criminal cases, for to hold such an expert's testimony incompetent as a matter of law would be to deprive the courts of potentially valuable assistance in understanding and evaluating a defendant's mental condition, when that condition is in issue. The dangers of unreliability stressed by the People relate to the testimony's weight and credibility, and may be countered by cross-examination and opposing expert testimony.

Our opinion in *Houser v. Eckhardt, supra,* also recognized that it is not a violation of the hearsay rule to permit a medical witness to testify as to the source and nature of the information on which he bases his opinion, including the history related by the patient. "When presented for this purpose, the statements are not evidence of the matter stated, and hence are not hearsay, but are merely explanatory of the opinion, enabling the jury [or court] to weigh it in the light of its basis." *Houser v. Eckhardt, supra,* 168 Colo. at 233, 450 P.2d at 668, *quoting C. McCormick, Law of Evidence* §267 (1954).

Finally, the alleged deficiencies or shortcomings in the doctor's examination methods, as well as the length of time between the events in question and the examination, also relate primarily to the doctor's credibility and the weight to be afforded his opinion. At some point a psychiatric examination might arguably be too remote in time from the events to be of any appreciable value, and thus expert testimony based on such an examination might be irrelevant as a matter of law. *See generally, C. McCormick, Law of Evidence* §184 (2d Ed. 1972). But this is not such a case. As previously noted, while we might have reached a different result, we will not disturb a trial court's decision to admit expert opinion absent a showing of abuse of discretion.

## II. *Voluntariness of the Statements.*

The People also contend that even if Dr. Yost's testimony was properly admitted, there was insufficient evidence to support the trial court's conclusion that the appellee's statements were not voluntary. We do not agree.

The trial court's findings of fact on the voluntariness of a confession will be upheld by this court on review if supported by adequate evidence in the record. *People v. Pineda,* 182 Colo. 385, 513 P.2d 452 (1973); *People v. Medina,* 180 Colo. 56, 501 P.2d 1332 (1972).

Here the testimony was conflicting. However, the trial court chose to believe Dr. Yost's testimony regarding the appellee's mental anxiety condition and her particular susceptibility to even subtle forms of intimidation. Moreover the trial court apparently chose to believe the appellee's statement that she had requested a lawyer-during questioning and had not been allowed to consult one. There was, therefore, sufficient evidence to support the court's conclusion that the appellee's statements were not made freely and voluntarily. That is as far as we need inquire. It is not our function to redetermine factual issues even where, on the cold transcript of the record, we might have reached a conclusion different from that reached by the trial court. In weighing credibility of conflicting testimony, trial judges who hear and observe the witnesses have many advantages we do not have when we review a transcript.

Accordingly, the trial court's ruling is affirmed.

MR. JUSTICE KELLEY and MR. JUSTICE GROVES concur in the result.

MR. JUSTICE KELLEY and MR. JUSTICE GROVES concurring in the result:

Since we agree with part II of the opinion, we concur in the result. We disagree with part I.