**Wilma F. GUNDY, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 80–2032.**

United States Court of Appeals, Tenth Circuit.

March 2, 1984.

Jack Kintzele of Kintzele & Collins, Denver, Colo., for plaintiff-appellant.

Thomas S. Martin, Acting Asst. Atty. Gen., W. Russell Welsh and Jeffrey Axelrad, Attys., Civ. Div., Dept. of Justice, Washington, D.C., Joseph F. Dolan, U.S.

Atty., and William C. Danks, Asst. U.S. Atty., Denver, Colo., for defendant-appellee.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

PER CURIAM.

This three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R.App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

This is an appeal from the district court's order denying relief to plaintiff on her personal injury claims brought pursuant to 42 U.S.C. § 247b(j)–(1), the National Swine Flu Immunization Program of 1976 ("Swine Flu Act").[1]

Plaintiff, Wilma F. Gundy, received a swine flu vaccination by injection on November 26, 1976 during the implementation of the swine flu vaccination program. On December 5, 1976, plaintiff experienced sudden and acute exhaustion. Three days later other symptoms developed such as fever, aches and coughing. By December 18, 1976, these symptoms had subsided only to be replaced by a numbness of the face, legs and arms.

Upon referral by her personal physician, Stanley Sontag, M.D., plaintiff was examined on January 3, 1977, by Eric Hammerberg, M.D., a neurologist, who determined that plaintiff may have been experiencing some depression but was otherwise normal. On January 16, 1977, plaintiff admitted herself to a hospital for extensive testing.

Plaintiff's treating physician, Dr. Sontag, stated in the hospital discharge summary that all of the tests results were within normal limits and plaintiff appeared healthy at all times. Dr. Sontag's diagnosis at this time favored depression as the source of plaintiff's complaints.

Plaintiff, however, continued to feel tired and experienced a predominately left-sided numbness to such a degree that she was unable to return to her employment as a school teacher until May of 1977. Prior to returning to school, plaintiff saw another neurologist, Dr. William G. Gerber, M.D. Dr. Gerber suggested that plaintiff "suffered central nervous system complications of swine flu inoculation which were disabling and probably caused a traumatic neurosis." Dr. Gerber recommended a spinal tap in order to entertain a diagnosis of Guillain-Barre Syndrome (GBS).[2] Dr. Gerber also recommended an evaluation by a psychiatrist.

Plaintiff worked full-time during the 1977–78 school year, but had her schedule so arranged that she was able to take approximately one week of leave per month and to take a rest period every day after lunch. Although testimony indicated that plaintiff's energy level at work was greatly reduced upon her return, the job performance evaluations revealed that plaintiff continued to put forth an excellent effort. In addition, plaintiff's medical reports reveal that subsequent to the vaccination, plaintiff had good motor coordination and could engage in strenuous activities such as tennis.

In September of 1978, plaintiff saw Peter S. Quintero, a neurologist who concluded that it was impossible at that time to make

---

1. The Swine Flu Act provided that the United States shall be liable for injuries arising out of the administration of the swine flu vaccine pursuant to the nationwide program initiated in 1976 for the prevention of an epidemic of swine flu. 42 U.S.C. § 247b(k)(2)(A). For a detailed discussion of the history of the Swine Flu Act, *see Hunt v. United States,* 636 F.2d 580, 589–93 (D.C.Cir.1980); *Sparks v. Wyeth Laboratories,* 431 F.Supp. 411 (W.D.Okl.1977), *aff'd per curiam,* Unpublished No. 77–1407 (10th Cir. filed December 12, 1978); *Alvarez v. United States,* 495 F.Supp. 1188 (D.Colo.1980).

2. Guillain-Barre Syndrome is a neurological disorder of unknown cause. The United States has stipulated that swine flu vaccine can cause GBS in certain instances. *See* Final Pretrial Order of November 15, 1979, entered in the multidistrict litigation, *In re Swine Flu Immunization Products Liability Litigation* M.D.L. No. 330, Misc. No. 78–0040 (D.D.C.1979) (Vol. II at 9).

a diagnosis of GBS. Of significance to Dr. Quintero was the diminished sensory response appearing only on plaintiff's left arm and leg, whereas the symptoms of GBS are typically symmetrical. Plaintiff finally had a spinal tap in November of 1978 under the supervision of Dr. Quintero. The test revealed an elevated gamma globulin level which is symptomatic of multiple sclerosis. Another test, a visual evoked response performed at Dr. Quintero's request, revealed abnormalities suggesting multiple sclerosis.

Plaintiff engaged in a final battery of tests conducted by Barry B. Blum, Ph.D. Dr. Blum's report maintains that plaintiff does not suffer from any psychiatric disorder. Dr. Blum wrote that he was "unable to determine the specific cause of [plaintiff's] problems, nor [was he] able to relate them to the Swine Flu vaccination."

In addition to plaintiff and several other lay witnesses, five physicians testified at trial. Dr. Peter Quintero testified that plaintiff suffered from Guillain-Barre Syndrome caused by the swine flu vaccine. Dr. Quintero acknowledged that plaintiff's GBS was atypical due to the asymmetrical (left-sided) numbness and the lack of any motor abnormalities.

Charles M. Poser, M.D., Professor and Chairman of Neurology at the University of Vermont College of Medicine, testified that plaintiff also experienced a rare form of GBS with almost purely sensory manifestations as a result of the vaccine. Dr. Poser also observed that some time after the vaccination, plaintiff suffered a minor stroke involving the right upper brain which resulted in the persistent numbness of the left side (excluding the tongue) and plaintiff's visual abnormalities.

Martin G. Lewis, M.D., Professor and Chairman of the Department of Immunopathology from Georgetown Medical Center in Washington, D.C., conducted blood serum tests on a sample provided by plaintiff. The results indicated that plaintiff came within the class of persons who has had GBS and received the swine flu vaccine. Dr. Lewis was unable to state whether plaintiff's condition was causally related to the vaccine.

Dr. Stanley Sontag, a general practitioner, testified that plaintiff had a neurological reaction as a result of the swine flu vaccination. Dr. Sontag, however, was not able to indicate what specific type of neurological disorder plaintiff suffered.

Dr. James Austin, Professor and Chairman of the Department of Neurology at the University of Colorado Medical Center testified that plaintiff did not suffer from GBS based on the criteria established by the National Institute of Neurological Communicable Diseases and Stroke. Dr. Austin was unable to determine the nature of plaintiff's disorder. Dr. Austin did, however, testify to a reasonable degree of medical certainty that plaintiff did not suffer any neurological disorder as a result of the swine flu vaccination.

The district court found that plaintiff did not contract GBS because none of the symptoms classically associated with GBS were present in plaintiff. Secondly, the court found that plaintiff had not established causation between the injection of swine flu vaccine and the alleged injury.

Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674, as made applicable by the remedial provisions of the Swine Flu Act, 42 U.S.C. § 247b(k)(2)(A), the law of the place where the act or omission occurred determines the legal basis for liability. In this case, the injection was administered in Colorado. The district court noted that under the applicable Colorado law, an event is the proximate cause of an injury if, in the natural and probable sequence of things, it produced the claimed injury. *Reaves v. Horton,* 33 Colo.App. 186, 518 P.2d 1380, 1385 (1973), *rev'd on other grounds,* 186 Colo. 149, 526 P.2d 304 (1974). The burden is upon the plaintiff to prove by a preponderance of the evidence that the vaccination was the proximate cause of her neurological problem. *Martin K. Eby Const. Co. v. Neely,* 344 F.2d 482, 485 (10th Cir.1965), *aff'd,* 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967). The district court ruled that plaintiff did not meet this bur-

den and, thus, had not shown the necessary element of causation.

On appeal plaintiff presents numerous issues in support of liability: (1) products liability; (2) negligent over-promotion; (3) substandard medical care by the inoculating physician; (4) negligence in failing to stockpile the vaccine; (5) failure to adequately inform; and (6) plaintiff was afflicted with GBS within ten weeks of inoculation. Plaintiff's three other contentions on appeal focus more directly on the pivotal issue: (1) causation was proved within the bounds of reasonable medical probability; (2) the burden of proof on causation shifted to the defendant; and (3) the trial court's questioning of Dr. Sontag was improper. The issue of causation is the critical question raised on this appeal because all theories of liability relied on by plaintiff depend upon a showing that the swine flu inoculation received by plaintiff caused the alleged injuries which ensued.

Plaintiff's initial argument on the proof of causation issue is that Dr. Austin, who testified that plaintiff did not have GBS and that plaintiff's injuries were not due to the swine flu vaccine, testified to the wrong standard for expert opinions under Colorado law. Plaintiff here refers to the fact that many of the questions asked of Dr. Austin were phrased in terms of "reasonable medical certainty." The applicable rule in Colorado requires that a doctor testify to a "reasonable medical probability." *Houser v. Eckhardt,* 168 Colo. 226, 450 P.2d 664 (1969). *See Poertner v. Swearingen,* 695 F.2d 435 (10th Cir.1982). Contrary to plaintiff's argument, however, this is not the correct standard for plaintiff's burden of proof. *Id.* Plaintiff had to prove causation by a preponderance of the evidence, *i.e.,* that it was more likely than not that defendant's conduct caused her injuries. *Martin K. Eby Const.,* 344 F.2d at 485.

While plaintiff seeks to base error on this difference in standards, it is noted that plaintiff did not object to the use of the "certainty" standard and, in fact, used the "certainty" standard in questioning Dr. Austin as well as other medical experts. A party may not sit idly by, watching error being committed, and then raise the claimed error on appeal without having accorded the trial court the opportunity to correct its action. *Neu v. Grant,* 548 F.2d 281, 287 (10th Cir.1977). Furthermore, an appellant may not complain on appeal of errors which he himself induced or invited. *Id.; Sanders v. Buchanan,* 407 F.2d 161 (10th Cir.1969). Plaintiff's failure to raise the issue with the trial court precludes any review except for the most manifest error.

It is clear from a reading of Dr. Austin's testimony, however, that under either of these standards, "certainty" or "probability," Dr. Austin's testimony would have been the same regarding the nature and causation of plaintiff's illness. (*See* Transcript of Dr. Austin's testimony, Vol. VI at 185.)

Next, plaintiff argues that the burden of proof on causation shifted to the defendant such that defendant was required to disprove any causal connection. It does not appear that plaintiff presented this legal argument to the district court in the first instance. We will not review matters raised for the first time on appeal. *Nulf v. International Paper,* 656 F.2d 553, 559 (10th Cir.1981). In any event, this argument has been thoroughly considered in our recent decision in *Lima v. United States,* 708 F.2d 502 (10th Cir.1983) and rejected. As we concluded in *Lima,* Colorado law would not require a shift in the burden of proof under the circumstances of this case.

Plaintiff contends that her injury developed within ten weeks of the vaccination and, thus, a causal connection was shown. Ten weeks is the amount of time in which a direct relationship has been shown between the swine flu vaccine and the occurrence of GBS. *See, e.g., Gates v. United States,* 707 F.2d 1141, 1146 (10th Cir.1983). This ten-week relationship, however, was only one of several factors considered by the district court in determining that plaintiff did not suffer from GBS. The district court apparently agreed with Dr. Austin's testimony

that the onset of the disease was not within ten weeks.

Ultimately, our review is limited to a determination of whether the district court's finding of no cause in fact was clearly erroneous. Findings of fact will not be overturned on appeal unless they are clearly erroneous. Fed.R.Civ.P. 52(a). A finding of fact is clearly erroneous if this court, upon review, is left with a definite and firm conviction that a mistake has been made. *Gutierrez v. Denver Post, Inc.,* 691 F.2d 945, 946 (10th Cir.1982) (and cases cited therein). A choice between two permissible views of the evidence is not clearly erroneous. *United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949). In a case tried to the court without a jury, the court has "the *exclusive* function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." *Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.,* 571 F.2d 1144, 1149 (10th Cir.), *cert. denied,* 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978). The district court observed the demeanor of the witnesses and in the face of conflicting testimony on causation found the testimony disfavoring any causal connection to be more credible. Upon review of the record, we cannot say that the district court's finding on plaintiff's failure to prove a causal link was clearly erroneous.

Because plaintiff was not able to show causation, plaintiff's first six contentions on appeal as set forth above are without merit. The final issue is whether the trial court became an "advocate" by its questioning of Dr. Sontag. Under Fed.R. Evid. 614(b), "[t]he court may interrogate witnesses, whether called by itself or by a party." Such interrogation is a matter within the discretion of the trial court and we will review such interrogation only for an abuse of that discretion. *United States v. Latimer,* 548 F.2d 311, 314 (10th Cir. 1977). In this case, however, plaintiff's objection to the trial court's interrogation is directed strictly to the questions relating to the adequacy of the warning given plaintiff regarding the side effects of the vaccination. Because the district court found that plaintiff failed to show a causal link, any argument going to the adequacy of the warning is now academic.

Accordingly, the judgment of the district court is AFFIRMED.