**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Oscar CERDA, Defendant–Appellee.**

**No. 91SA205.**

Supreme Court of Colorado, En Banc.

Nov. 12, 1991.

A.M. Dominguez, Jr., Dist. Atty., R. Victoria Beyerinck, Deputy Dist. Atty., Greeley, for plaintiff-appellant.

David F. Vela, State Public Defender, Bryan D. Shaha, Deputy State Public Defender, Greeley, for defendant-appellee.

Justice ERICKSON delivered the Opinion of the Court.

This interlocutory appeal by the prosecution, pursuant to C.A.R. 4.1, challenges the trial court's order granting the defendant's motion to suppress evidence obtained from a traffic stop. The trial court held that there was no legitimate reason for the stop and the evidence obtained as a result of the stop should be suppressed. We affirm.

The prosecution contends the stop was permissible under section 16-3-103(1), 8A C.R.S. (1986), which provides:

A peace officer may stop any person who *he reasonably suspects is committing, has committed, or is about to commit a crime* and may require him to give his name and address, identification if available, and an explanation of his actions. The stopping shall not constitute an arrest.

(Emphasis added.) This section codified this court's holding in *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971), that "[i]n order to detain an individual for questioning ... the officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime." *Stone,* 174 Colo. at 509, 485 P.2d at 497; *see also Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967).

The prosecution claims that the officer saw Cerda operating an automobile with a cracked windshield in violation of section 42-4-201(4), 17 C.R.S. (1984 & 1991 Supp.). That section prohibits the operation of a vehicle "upon any highway unless the driver's vision through any required glass equipment is normal and unobstructed." The officer stopped Cerda and requested his driver's license.[1] Cerda told the officer that his license had been suspended. After verifying the suspension, Cerda was arrested and charged with driving after his operator's license was revoked pursuant to the habitual traffic offender statute, section 42-2-203, 17 C.R.S. (1984).

Cerda moved to suppress the evidence obtained as a result of the stop, contending that the officer did not have the reasonable suspicion required by section 16-3-103(1). The trial court granted Cerda's motion after hearing the officer's testimony and concluding that it was "very nebulous and unclear as to the type of crack [and] the location of the crack." The court found that although the officer observed a crack in Cerda's windshield, the officer conceded that it did not warrant a ticket. The court stated there was no testimony that the crack obscured the driver's vision. The court held that once Cerda was stopped, the officer "had no right to go on further with ... questioning or any other contact" since there was no reasonable suspicion to support the stop.

In a supplemental ruling, the trial court elaborated on its findings. The court stated that, based on the evidence presented, it could not conclude why the stop was made.

---

1. Section 42-2-113(1), 17 C.R.S. (1991 Supp.), requiring the exhibition of a driver's license provides:

No person who has been issued a driver's ... license ... or [a Colorado] identification card ... who operates a motor vehicle in this state and who has such license ... or identification card in such person's immediate possession shall refuse to ... hand the same to any peace officer who has requested such person to do so if such peace officer reasonably suspects that such person is committing, has committed, or is about to commit a violation of article 2, 3, 4, 5, 6, 7, or 8 of this [Vehicles and Traffic] title.

However, noting that the officer could not recall the severity or position of the crack and took no further actions regarding the crack, the court concluded that the stop was not made due to a crack in the windshield. Since no other legitimate reason was given, the court inferred there was no legitimate reason for the stop.

The trial court's findings are supported by the record. "It is not our function to redetermine factual issues even where, on the cold transcript of the record, we might have reached a conclusion different from that reached by the trial court." *People v. Parks*, 195 Colo. 344, 349, 579 P.2d 76, 79 (1978); *see, e.g., People v. Corley*, 698 P.2d 1336 (Colo.1985).

The prosecution also contends that *People v. Clements*, 665 P.2d 624 (Colo.1983), supports the conclusion that the stop was proper. We disagree. In *Clements* an officer testified that he stopped the defendant for having an illegible license plate in violation of section 42–3–113(2), 17 C.R.S. (1973).[2] We concluded that the stop was proper even though the officer determined when he approached the vehicle that the license was valid.

The relevant facts in *Clements* are entirely different from those before us. Although the officer determined Clements' license was valid, he had a legitimate reason for the stop because Clements violated section 42–3–113(2), 17 C.R.S. (1973).[3] Here, the trial court held that Cerda was not in violation of section 42–4–201, 17 C.R.S. (1984 & 1991 Supp.), and that the stop was not supported by a reasonable suspicion of a violation of the statute. Since the officer did not reasonably suspect that Cerda was committing, had committed, or was about to commit a crime, the stop was not permissible under section 16–3–103(1), 8A C.R.S. (1986). Accordingly, we affirm the trial court's order suppressing the evidence obtained as a result of the traffic stop.

VOLLACK, J., dissents and ROVIRA, C.J., joins in the dissent.

Justice VOLLACK dissenting:

The majority holds that "because the trial court determined the stop was not supported by a reasonable suspicion that a crime was being or had been committed, evidence obtained as a result of the stop was properly suppressed." I respectfully dissent. In my view the record, statutes, and case law do not support the conclusions of the majority. *See* § 42–4–201(4), 17 C.R.S. (1984); § 42–2–113(1), 17 C.R.S. (1991 Supp.); *People v. Clements*, 665 P.2d 624 (Colo.1983).

I.

On December 3, 1990, a police officer with the city of Greeley (the officer) was on routine patrol when he observed the defendant driving a motor vehicle with a defective windshield. The officer called dispatch to give the location of the vehicle and then initiated a traffic stop. Upon making the traffic stop, the officer asked the defendant for his driver's license, registration, and proof of insurance. The defendant gave the officer a Colorado identification card and his registration but stated that he did not have a driver's license or proof of insurance. The officer asked the defendant why he did not have a license, and the defendant stated that his license had been suspended. The officer returned to his squad car and called dispatch to determine the status of the defendant's driver's license. Dispatch advised the officer that the defendant was under suspension as a habitual traffic offender. The officer ar-

---

**2.** Section 42–3–113(2), 17 C.R.S. (1973), provided:

> Every number plate shall at all times be securely fastened to the vehicle to which it is assigned, ... in a place and a position to be clearly visible, and shall be maintained free from foreign materials and in a condition to be clearly legible.

**3.** We said in *Clements:*

> Although [the officer] testified that he was able to determine that the plate was valid, that does not change the fact that it was illegible. The police officer had *probable cause to stop and issue a summons* to the defendant when he observed that the plate was not readable. 665 P.2d at 625 (emphasis added).

rested the defendant and charged him with driving after his license had been revoked, pursuant to the habitual traffic offender statute, § 42–2–203, 17 C.R.S. (1984).

Prior to the trial on the merits, the defendant filed a motion to suppress the evidence obtained as a result of the stop. At the motion hearing, the officer testified that he stopped the defendant because the defendant's windshield was cracked. The defendant argued that once it was obvious to the officer that the view through the window was normal and unobstructed, the defendant should not have been detained any longer. The People argued that, because of the broken windshield, the officer could reasonably suspect that the defendant was committing a traffic violation under section 42–4–201(4), 17 C.R.S. (1984), which provides that "[n]o vehicle shall be operated upon any highway unless the driver's vision through any required glass equipment is normal and unobstructed."

In its initial ruling on the motion to suppress the evidence on May 22, 1991, the court found that the officer "observed the crack" but "that it wasn't of sufficient gravity to even warrant a ticket." The court concluded that once the vehicle was stopped and the officer had an opportunity to observe the crack, he had no right to continue his contact with the defendant. The next day, May 23, 1991, the trial judge made a supplemental ruling "to elaborate and make more specific and clearer findings." However, the judge essentially issued a new ruling by stating that he could not conclude, based on the evidence, why the officer stopped the defendant.

I believe that the trial court erred in both the May 22 and May 23 rulings. First, the stop was proper. Second, once the stop was made, the officer could request that the defendant produce his license.

## II.

The trial court stated that the police officer had not announced "his real reason for stopping" the defendant and inferred from this that there was "no legitimate reason" for the stop. The trial court's ruling on whether the officer had a right to stop the defendant is contrary to law and the court's own findings. Section 42–4–201(4), 17 C.R.S. (1984), requires that a driver's vision through the car windows be normal and unobstructed. The officer testified that he observed the defendant driving with a cracked windshield, and this testimony was the only evidence received at the suppression hearing concerning the cracked windshield.[1] Once the officer observed that the windshield was cracked, he could reasonably suspect that the defendant was committing a traffic violation under section 42–4–201(4) and could stop the defendant's vehicle to determine whether the crack was obstructing the defendant's view. *See* § 42–4–104, 17 C.R.S. (1984) (stating that it is unlawful to do any act forbidden, or fail to do any act required, in the Vehicles and Traffic title). A police officer who has reasonable suspicion that someone is violating a traffic regulation may stop that individual to investigate that possible violation. *See People v. Clements*, 665 P.2d 624 (Colo.1983) (defendant stopped after police officer observed possible traffic violation).

In *Clements*, a police officer testified at a suppression hearing that he observed an automobile bearing a torn and unreadable temporary license plate and that he stopped the vehicle intending to issue a summons for having an illegible license plate, pursuant to section 42–3–113(2), 17 C.R.S.

---

1. The district judge ruled:

    Defense counsel pointed out it may have been permissible to initially stop but once the officer observed the window, apparently he didn't think it was very serious. He has never issued a ticket regarding that. He can issue a ticket to the owner. He failed to issue the ticket to the owner on another subsequent occasion apparently. The crack is not—apparently not of much consequences.

    So the Court concludes that you had no right to go on further with with [sic] questioning or any other contact. Once the vehicle was stopped and he apparently observed—and the court finds that he observed the crack— that it wasn't of sufficient gravity to even warrant a ticket. There was no testimony that it was of a character that it would impair the driver's normal and unobstructed vision. So the Court will suppress everything.

(1973).[2] The officer further testified that, as he approached the vehicle, he could read the license plate when he "stood directly over it and looked straight down at it." *Id.* at 625. By doing this, he determined that the license plate was valid. The officer then asked the defendant for his license, and the defendant responded that he had left it at home. After the defendant gave the officer his name, the officer returned to his squad car and called police dispatch. The defendant was subsequently arrested for operating a motor vehicle after his license had been revoked, pursuant to the habitual traffic offender statute. The defendant was charged with "driving after judgment prohibited."

In reversing the trial court's grant of defendant's motion to suppress the evidence from the stop, the court stated:

> The undisputed testimony at the suppression hearing was that the temporary plate was torn and unreadable. Although [the officer] testified that he was able to determine that the plate was valid, that does not change the fact that it was illegible. The police officer had *probable cause to stop* and issue a summons to the defendant when he observed that the plate was not readable.

*Id.* at 625 (emphasis added).

In the present case, the undisputed testimony at the suppression hearing was that the windshield was cracked. Even though the windshield was cracked, the trial court stated that because the officer could not remember the severity or position of the crack and did not issue a ticket for the crack, the crack was not of consequence. The court stated that it could not conclude why the officer stopped the defendant and then went on to conclude that the officer had not announced his real reason for the stop. The trial court's conclusion that there was some other reason for the stop conflicts, however, with the undisputed evidence in the record that the windshield was cracked at the time of the stop.

The defendant's operation of the motor vehicle with a cracked windshield was a possible traffic violation. Once the officer observed the cracked windshield, he had a right, pursuant to sections 42-4-201(4) and 42-4-104, to stop the defendant's vehicle to determine whether the crack was obstructing the defendant's view. Accordingly, the stop was proper.[3]

## III.

Once the officer stopped the defendant to investigate the cracked windshield, he could request that the defendant produce his license. Section 42-2-113(1), 17 C.R.S. (1991 Supp.), provides:

> No person who has been issued a driver's ... license ... who operates a motor vehicle in this state, and who has such license ... in such person's immediate possession shall refuse to remove such license ... and to hand the same to any peace officer who has requested such person to do so if such peace officer reasonably suspects that such person is committing, has committed, or is about to commit a violation of article ... 4 ... of this [Vehicles and Traffic] title.

After observing the cracked windshield, the officer could reasonably suspect that the defendant was violating section 42-4-201(4), 17 C.R.S. (1984), and thus the request for the defendant's driver's license was valid pursuant to section 42-2-113(1), 17 C.R.S. (1991 Supp.).

The defendant argued, however, that the stop exceeded the scope of an investigatory stop. The defendant contended that once the officer determined that the crack did not obstruct the defendant's view, the officer no longer had a right to detain him. This court addressed this same argument in *People v. Clements*, 665 P.2d 624 (Colo. 1983). In *Clements*, the defendant argued

---

**2.** Section 42-3-113(2), 17 C.R.S. (1973), provided:

> Every number plate shall at all times be securely fastened to the vehicle to which it is assigned, ... in a place and a position to be clearly visible, and shall be maintained free from foreign materials and in a condition to be clearly legible.

**3.** Defense counsel argued:

> [O]ur theory is assuming there was a cracked windshield when Mr. Cerda was stopped and it was obvious to the officer that the cracked windshield did not obstruct or the vision was normal and unobstructed then that limited stop should have ceased and ... he should not be detained any further.

that once the officer had examined the temporary license plate and determined that it was valid, he was no longer justified in continuing to detain the defendant and that the request for the defendant's driver's license was improper. *Id.* at 625. This court disagreed and stated that the "demand for the driver's license was proper." [4] *Id.*

A police officer's request for a driver's license is a routine procedure when stopping a motorist to investigate a possible traffic violation. Both section 42–2–113(1) and the *Clements* case make this patently clear. The trial court erred when it concluded that the officer had "no right to go on further with questioning or any other contact." Consequently, the officer's request for the driver's license was proper.

Accordingly, I respectfully dissent.

I am authorized to say that Chief Justice ROVIRA joins in this dissent.

---

**4.** The *Clements* court cited § 42–2–113. This section, at the time of the decision, provided:
> Every licensee shall have his driver's license in his immediate possession at all times when operating a motor vehicle, and shall display the same upon demand by any officer ... and shall remove said license ... and hand the same to the officer requesting said license....

This court interpreted this statute as requiring reasonable suspicion as a prerequisite to demanding the license, and thus incorporated the reasonable suspicion requirements of § 16–3–103, 8A C.R.S. (1986), into the statute. The new § 42–2–113 expressly requires that the officer reasonably suspect a traffic violation before requesting the license.