**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Patrick MONTOYA, Defendant–Appellee.**

No. 91SA412.

Supreme Court of Colorado, En Banc.

April 13, 1992.

252

Norman S. Early, Jr., Dist. Atty., Second Judicial Dist., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., John W. Madden, IV, Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, State Public Defender, Frederick Martinez, Deputy State Public Defender, Denver, for defendant-appellee.

Justice ERICKSON delivered the Opinion of the Court.

This interlocutory appeal by the prosecution is pursuant to C.A.R. 4.1 and asserts that the trial judge erred in suppressing evidence seized in an investigatory stop. We affirm.

Patrick V. Montoya, the defendant, was charged with unlawful possession of cocaine, a class three felony. § 18–18–105, 8B C.R.S. (1986). On January 20, 1991, a police officer was making a routine check of a topless bar in a high crime area that he inspects on a regular basis. The defendant was seated at a table located in a darkened area of the bar. When the defendant left the table to go to the men's room, he passed the police officer, who saw a bulge that resembled a .25 caliber automatic pistol protruding from the defendant's left front pant pocket. When the defendant returned from the men's room, the officer met him at his table and requested that the defendant accompany him to a lighted foyer in the bar. When they reached the foyer, the officer felt the defendant's left pocket and realized that the bulge in the pocket was a lighter and a pen knife, not a .25 caliber automatic pistol.

While the frisk was being made, the defendant put his hand in the back of his pants. The officer grabbed the defendant's hand and pulled it out, thinking the defendant might have a weapon. When he pulled the hand out, the officer saw a plastic bag sticking out. He searched the back of the defendant's pants and seized bindles of cocaine, which provide the basis for the charges against the defendant.

At the suppression hearing the officer testified that the defendant's conduct was not suspicious and that the stop and frisk was based solely upon the officer's observation of the defendant when he walked from his table in the bar to the men's room. In granting the defendant's motion to suppress, the trial judge found that there was no reasonable or articulable suspicion to support the police officer's stop and frisk of the defendant because a number of different objects in the defendant's pocket could create the same outline and image

that the officer mistakenly believed to be a .25 caliber automatic pistol.

■ The origin of the concept of stop and frisk can be traced to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). In *Terry*, an experienced detective became suspicious when he saw three men walking by a store. The detective confronted the trio when he suspected they were casing the store for a stickup. The trio was questioned, they mumbled names, and Terry was patted down. Terry had a pistol and the frisk of his companions produced a second pistol. In upholding the "stop and frisk," the United States Supreme Court declared that a police officer may conduct a reasonable search for weapons to protect himself when he has reason to believe that an individual is armed and dangerous even though there is not probable cause for an arrest. The Court said:

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.... And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Terry*, 392 U.S. at 27, 88 S.Ct. at 1883.

In the companion case of *Sibron v. New York*, the Court held that the narcotics seized by the officer must be suppressed and based the holding on these on facts:

> At the hearing on the motion to suppress, Officer Martin testified that while he was patrolling his beat in uniform on March 9, 1965, he observed Sibron "continually from the hours of 4:00 P.M. to 12:00, midnight ... in the vicinity of 742 Broadway." He stated that during this period of time he saw Sibron in conversation with six or eight persons whom he (Patrolman Martin) knew from past experience to be narcotics addicts. The offi-

cer testified that he did not overhear any of these conversations, and that he did not see anything pass between Sibron and any of the others. Late in the evening Sibron entered a restaurant. Patrolman Martin saw Sibron speak with three more known addicts inside the restaurant. Once again, nothing was overheard and nothing was seen to pass between Sibron and the addicts. Sibron sat down and ordered pie and coffee, and, as he was eating, Patrolman Martin approached him and told him to come outside. Once outside, the officer said to Sibron, "You know what I am after." According to the officer, Sibron "mumbled something and reached into his pocket." Simultaneously, Patrolman Martin thrust his hand into the same pocket, discovering several glassine envelopes, which, it turned out, contained heroin.

*Sibron*, 392 U.S. at 45, 88 S.Ct. at 1893.

We defined the concept of stop and frisk in *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971), when we said:

> In order lawfully to detain an individual for questioning, (1) the officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) the purpose of the detention must be reasonable; and (3) the character of the detention must be reasonable when considered in light of the purpose.

*Id.* at 509, 485 P.2d at 497.

■ Following *Stone*, we announced a number of decisions involving the question of whether there was an articulable suspicion to support a police officer's decision to stop and frisk a suspect. Every "stop and frisk" case must be resolved on the basis of the particularized facts that are presented at the suppression hearing. *See People v. Rahming*, 795 P.2d 1338 (Colo.1990); *People v. Wilson*, 784 P.2d 325 (Colo.1989); *People v. Ratcliff*, 778 P.2d 1371 (Colo. 1989); *People v. Burley*, 185 Colo 224, 523 P.2d 981 (1974); *People v. Martineau*, 185 Colo. 194, 523 P.2d 126 (1974). A protective search for a weapon is justified only when the circumstances of a valid stop

provide the officer with a reasonable basis to suspect that an individual is armed and dangerous. *People v. Ratcliff*, 778 P.2d at 1376. Here, the trial court found that the initial stop was not valid. *See People v. Cerda*, 819 P.2d 502 (1991).

The trial court found that a simple bulge in a man's pocket is so basic when the item is small in size that there are a whole host of lawful items which could be mistakenly perceived as a weapon of some sort. The bulge was so consistent with innocent activity that the trial court found that the officer who searched the defendant did not have a reasonable articulable suspicion to believe that the defendant had committed or was committing a crime.

The trial court also questioned the police officer's credibility on his statement that he believed that the defendant had a weapon. After the police officer satisfied himself that there was no weapon in the defendant's pocket, he spun the defendant around and seized his right hand, which was in the back of his pants, searched the back of the pants, and found the plastic bag.

The trial court concluded that there was no basis for determining that criminal activity had occurred and the trial court's factual findings must be accorded some finality. In *People v. Parks*, 195 Colo. 344, 579 P.2d 76 (1978), we said:

> It is not our function to redetermine factual issues even where, on the cold transcript of the record, we might have reached a conclusion different from that reached by the trial court. In weighing credibility of conflicting testimony, trial judges who hear and observe the witnesses have many advantages we do not have when we review a transcript.

*Id.* at 349, 579 P.2d at 79.

Since the trial court finding that there was not a reasonable and articulable basis for the stop was based on the facts presented at the suppression hearing, we conclude that the trial court's order suppressing the evidence seized should be sustained.

Accordingly, we affirm and return this case to the district court for further proceedings consistent with this opinion.