UNITED STATES of America, Plaintiff-Appellee,

v.

James R. GALLUP, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Darryl E. DUKE, Defendant-Appellant.

Nos. 86–1184, 86–1286.

United States Court of Appeals, Tenth Circuit.

Feb. 27, 1987.

Amanda S. Meers, Asst. U.S. Atty. (Benjamin L. Burgess, Jr., U.S. Atty., with her on brief), Kansas City, Kan., for plaintiff-appellee.

John H. Fields of Carson & Fields, Kansas City, Kan. (Charles F. Marvine, Jr. of Dysart, Taylor, Penner & Lay, Kansas

City, Mo., with him, on brief), for defendant-appellant, Gallup.

Carl E. Cornwell of Horner, Duckers & Cornwall, Kansas City, Kan., on brief, for defendant-appellant, Duke.

Before BARRETT and SEYMOUR, Circuit Judges, and CHILSON *, District Judge.

BARRETT, Circuit Judge.

The appellants, Darryl E. Duke (Duke) and James R. Gallup (Gallup) were jointly tried by jury and convicted of violating 18 U.S.C. § 371, Conspiracy to Defraud the United States government, and 18 U.S.C. § 1012, Influencing Department of Housing and Urban Development transactions. Both Gallup and Duke raise ten issues on appeal[1], including whether the evidence was sufficient to support conviction, whether the trial court erred in its instructions to the jury and its various evidentiary rulings during the course of the trial, and whether an order of restitution was appropriate, given that the United States Department of Housing and Urban Development (HUD) suffered no pecuniary loss.

### Facts

Gallup was an employee of the Public Housing Authority of Kansas City, Kansas (PHA) during the times relevant to this case. The PHA was a local agency of the Kansas City municipal government that received funding from HUD for the purpose of constructing, maintaining, operating and managing low income housing in Kansas City, Kansas. The relationship between HUD and the PHA was governed by federal law, HUD regulations and a contract known as the Consolidated Annual Contributions Contract. One provision in the contract prohibited the PHA from entering into any contract or property project in which any officer, employee or board member has any interest, either direct or indirect (R., Vol. II, pp. 43–44). Part 1 of the contract pertains specifically to the rela-

---

* Honorable Hatfield Chilson, Senior United States District Judge for the District of Colorado, sitting by designation.

1. Duke, (No. 86–1286 was submitted on the brief).

tionship of HUD to a specific local housing authority, which in this case is the Kansas City PHA, and contains guidelines for the various low income housing projects to be built or otherwise acquired by the PHA using HUD funds or financing.

Project KS1–23 was an "Acquisition with Rehabilitation" project that authorized the PHA to acquire existing buildings needing rehabilitation to meet HUD and PHA requirements. This project was approved by HUD in 1980, whereupon the PHA was required to locate properties and submit them to HUD for final approval and financing.

At the time of this project in 1980, Gallup was employed by the PHA as Director of Technical Services. The evidence is conflicting concerning the scope of Gallup's duties and responsibilities but his job description included the responsibility for locating appropriate properties for acquisition under the project (R., Vol. III, pp. 166–67). Co-defendant Duke was Gallup's brother-in-law and he was employed as a salesman by a trucking company at all times relevant to this case. Duke's supervisor at this company was an individual named John Mosier.

In early 1980, Duke learned from John Mosier that several duplex properties owned by Mosier's relatives in Kansas City, primarily those of his father-in-law, Mr. Seelbinder, (Mosier and Seelbinder properties) were for sale. Duke secured an oral agreement from Mosier, who was his friend, by which Mosier would pay a "finder's fee" of approximately ten percent to Duke if he could find a buyer. Without telling him anything about the potential buyer, Duke instructed Mosier to write up descriptions of the properties and submit them under a cover letter to "Jim Gallup." Duke did not inform Mosier of Gallup's title or address (R., Vol. III, pp. 11–16). Mosier knew only that Gallup was Duke's brother-in-law. This written list and cover letter somehow made its way into the files of the PHA, although it is unclear how. It is also unclear what or who set things in motion, but Gallup duly had the properties inspected and the initial work and neces-

sary papers prepared (R., Vol. IV, pp. 13–15, 34–36).

Linda Lewis, Duke's wife at the time, testified that on several occasions during March, April and May of 1980, she overheard discussions between Gallup and Duke concerning the sale of the Mosier and Seelbinder properties and their plan to split the finder's fee between them. Ms. Lewis' credibility was hotly contested both at trial and in post-trial motions but apparently is not now in issue.

HUD ultimately approved the purchase of the Mosier and Seelbinder properties and the closing was held on August 15, 1980. Gallup attended the closing, but Duke did not. Duke had requested the finder's fee be paid in cash, which Mosier and Seelbinder refused to do. Instead, they gave Duke a certified check for $85,084.00 and a cashier's check for $6,100.00. These checks were not tendered at the closing, but rather at a separate meeting later the same day that Duke attended, but Gallup did not.

Later that day, Gallup and Duke flew to Las Vegas together for the weekend. Their room at the Landmark Hotel was registered under Gallup's name, while the check for $6,100.00 was cashed by Duke at the hotel. Upon returning to Kansas City on August 18, 1980, Duke cashed the $85,084.00 check and leased a safe deposit box at a Kansas City bank. Gallup also maintained a safe deposit box at this Kansas City bank, and on August 19, 1980, the day after Gallup and Duke returned from Las Vegas, Gallup's wife accessed Gallup's safe deposit box. On September 5, 1980, Gallup opened the safe deposit box and later he went to the Indian Springs State Bank where he purchased a $10,000 certificate of deposit with cash (R., Vol. IV, pp. 179–80).

On November 12, 1980, Gallup and Duke opened their respective safe deposit boxes and went together to the Indian Springs State Bank where each purchased a $10,000.00 certificate of deposit with cash (R., Vol. IV, pp. 170–71, 180). The Indian Springs State Bank apparently failed to file the required currency transaction reports with the Internal Revenue Service covering

these purchases by Gallup and Duke. Whether this was something the bank routinely failed to do is unclear. Gallup's federal income tax return for the year 1980 failed to disclose any source of income for the two certificates of deposit. Gallup testified that he kept large amounts of cash in his safe deposit box. On cross-examination, however, he averred that he was skilled with investments and rates of return and read the Wall Street Journal regularly. The government argued that inasmuch as large sums of money kept in a safe deposit box would earn no interest, it was illogical that a skilled investor would keep money in this manner.

Duke's 1980 income tax return showed that he received $85,000 in a "real estate deal" and had split the fee with "other people" as "commissions." (R., Vol. V, p. 18; Gov.Exh. 20). Duke did not declare the receipt of the $6,100.00 check that he cashed in Las Vegas (R., Vol. V. pp. 14–18; Gov.Exh. 20).

The evidence showed that no official or employee of HUD or the PHA was advised of the payment of a finder's fee to Duke, nor did the sellers know that Duke paid a portion of the finder's fee to any other person.

Gallup and Duke were indicted on two counts. Count 1 alleged that the defendants conspired and agreed:

[T]o defraud the United States department of Housing and Urban Development of and concerning its governmental and contractual functions and rights, that is, of and concerning the right of the United States Department of Housing and Urban Development to have its development contracts with local housing authorities performed in accordance with the laws of the United States, HUD rules and regulations and the provisions of said contract, and in honest and impartial manner, free from deceit, corruption, misconduct, fraud, improper influence and conflict of interest.

Count 1 charged a violation of Title 18, U.S.C. § 371, which makes it punishable as a felony:

If two or more persons conspire ... to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy....

Count 2 charged Gallup and Duke with knowingly inducing or influencing HUD to enter into a contract with the Housing Authority to provide federal funds for the purchase of property and knowingly, willfully and unlawfully failing to disclose to HUD the special benefit that they expected to receive as a result of said contract, in violation of Title 18, U.S.C. § 1012. After more than a week of trial, the jury found both Gallup and Duke guilty of both counts.

*Contentions on Appeal*

Gallup contends, and Duke joins in these contentions by reference, that: (1) it cannot be determined whether the jury found Gallup guilty of conspiring to wrongfully induce or influence HUD (18 U.S.C. § 1012), or whether he was found guilty of the felony of defrauding the United States; (2) testimony of two witnesses concerning their interpretation of the conflict of interest provision of the Annual Contributions Contract was improper; (3) a family relationship, in and of itself, is not sufficient to create a conflict of interest which, if unrevealed, defrauds the United States; (4) 18 U.S.C. § 371 is unconstitutionally vague as applied to this case; (5) the trial court, in its instructions to the jury, in effect held Gallup to a stricter standard of conduct than other government employees are held; (6) the trial court erred in refusing to charge the jury as requested, in giving a circumstantial evidence instruction, and in failing to give a good faith instruction; (7) the evidence was insufficient to support a finding that a conspiracy existed under the provisions of 18 U.S.C. § 371; (8) the trial court erred in admitting certain testimony and evidence; (9) there was insufficient evidence of any overt act in furtherance of a conspiracy occurring within the statutory period of limitation; and (10) the trial court could not order restitution if the government suffered no pecuniary loss.

## I.

Gallup's first contention is anchored to the proposition that Count 1 of the indictment does not charge a substantive offense. This argument evidences a serious misunderstanding of the charge in Count 1 of the indictment. Gallup apparently does not accept the government's assertion that 18 U.S.C. § 371 is a substantive crime. He further contends that charging him pursuant to 18 U.S.C. § 371 was a subterfuge designed to invoke the more severe felony penalty provisions, when in fact he should have been charged with a conspiracy to violate 18 U.S.C. § 1012, a misdemeanor. Gallup concludes that "[t]he thrust of all of the Government's evidence in this case was that Gallup had a conflict of interest by reason of his interest, direct or indirect, in the project."

We do not agree with any of these contentions. It has long been accepted that 18 U.S.C. § 371 defines a substantive crime. In *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the defendants alleged that their indictment pursuant to § 37 of the Criminal Code (now 18 U.S.C. § 371) was defective because it charged a conspiracy to commit a substantive offense requiring concerted action, namely bribery. The Court rejected this contention, stating:

> The indictment does not charge as a substantive offense the giving or receiving of bribes, nor does it charge a conspiracy to give or accept bribes. It charges a conspiracy to ... defraud the United States, the scheme of resorting to bribery being averred only to be a way of consummating the conspiracy and which, like the use of a gun to effect a conspiracy to murder, is purely ancillary to the substantive offense.

*Id.* at 66–67, 62 S.Ct. at 463–64, citing from *United States v. Manton*, 107 F.2d 834, 839 (2d Cir.1939).

In *United States v. Conover*, 772 F.2d 765 (11th Cir.1985), the court dealt with a conflict-of-interest contention similar to that in the instant case. In *Conover*, the defendants were accused of conspiring to defraud the Rural Electrification Administration (the REA), a United States agency that lends money to rural electric cooperatives. The defendants, one of whom was an employee of Seminole, a rural electric cooperative, and one of whom was a friend and business associate of the Seminole employee, argued that the evidence showed, at most, violations of Seminole's conflict of interest policy, rather than the existence of a conspiracy to defraud the REA. They contended that the indictment failed to charge a crime under 18 U.S.C. § 371. The court rejected this argument, stating:

> There is no requirement in the statute, or in the cases construing the statute, that the object of the conspiracy must be to cause a financial loss to an agency of the government [citations omitted]. Nor is there any requirement that the indictment charge a knowing violation of an agency's rules, regulations, or procedures. The statute is designed 'to protect the integrity of the United States and its agencies, programs, and policies' [citation omitted]. Moreover, '[t]he United States has a fundamental interest in the manner in which projects receiving its aid are conducted. This interest is not limited strictly to accounting for United States Government funds invested in the project, but extends to seeing that the entire project is administered honestly and efficiently and without corruption and waste' [citations omitted].

*Id.* at 771.

We can, as in *Conover*, dispose of Gallup's contention that he and Duke have committed no crime under § 371. There is far more at stake here than a violation of the Housing Authority's conflict of interest policy. There is a fundamental compromise of the Housing Authority's, and consequently of HUD's, interest in having its projects "administered honestly and efficiently and without corruption and waste." *Id.*, 771.

Moreover, Gallup and Duke were indicted under Count 1 for conspiracy to defraud the United States, not for conspiracy to induce or influence HUD pursuant to 18 U.S.C. § 1012. The latter encompasses

Count 2. The two offenses are completely separate and distinct.

■■■ There is no merit in Gallup's contention that he should have been charged with the misdemeanor version of § 371 because it relates to the misdemeanor offense proscribed in § 1012.[2] Indeed, Gallup and Duke could have been charged solely under Count 1. Count 2 could have been dispensed with, without harm to the government's case. In *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975), the Court said:

> It is well settled that the law of conspiracy serves ends different from, and complementary to, those served by criminal prohibitions of the substantive offense. Because of this, consecutive sentences may be imposed for the conspiracy and for the underlying crime. . . . The law of conspiracy identifies the agreement to engage in a criminal venture as an event of sufficient threat to social order to permit the imposition of criminal sanctions for the agreement alone, plus an overt act in pursuit of it, regardless of whether the crime agreed upon actually is committed.

*Id.* at 693–94, 95 S.Ct. at 1268–69. It is axiomatic that Gallup and Duke could have been prosecuted for conspiracy without ever having committed a substantive crime. The trial court did not err in the manner in which it instructed the jury on the two counts. We find no merit in Gallup's contention that the evidence amounted only to a conflict of interest on Gallup's part.

## II.

Gallup maintains that it was error for the trial court to permit two witnesses, one an attorney for the PHA (Nichols) and one a PHA board member (Hutton) to testify concerning their interpretation of the Annual Contributions Contract provisions governing conflicts of interest. During Nichols' testimony, Gallup objected once to the government's line of questioning when the Annual Contributions Contract was

brought up. This objection was sustained. However, the government continued the line of questioning by changing the wording of the questions, to which Gallup did not object. When Gallup cross-examined the witness, he delved further into the objectionable area, then filed a written motion to strike. The witness Hutton testified very briefly, over objection, concerning his opinion as a board member whether an employee whose relative had an interest in a housing project would have a conflict of interest. When it was argued, Gallup's written motion to strike was orally expanded to include Hutton's testimony.

■■■ We hold that Gallup's failure to object when the government continued the line of questioning, coupled with his foray on cross-examination into the objectionable area, constituted waiver of any objection he might have to Nichols' testimony. In *Gundy v. United States*, 728 F.2d 484 (10th Cir.1984), we held that "[A] party may not sit idly by, watching error being committed, and then raise the claimed error on appeal. . . . Furthermore, an appellant may not complain on appeal of errors which he himself induced or invited." *Id.* at 488. Nor may a party complain on appeal of errors to which he has failed to object and which he has compounded by pursuing on cross-examination.

■■■ With regard to Hutton's testimony, an objection was timely made on grounds of relevance when Hutton was asked if he, as a member of the board, would have been concerned to know that a relative of an employee had received a finder's fee. Since the government's theory of the case was that Gallup had received a share of the finder's fee, the relevance objection was perhaps well founded. However, the court's decision to allow the evidence was discretionary, and we will not reverse absent a clear abuse of that discretion. *United States v. Twilligear*, 460 F.2d 79 (10th Cir.1972).

---

**2.** The second paragraph of § 371 provides "If, however, the offense, the commission of which is the object of the conspiracy, is a misdemean-

or only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor."

■ The Annual Contributions Contract contains a provision forbidding the PHA from entering into any contract in which any employee of the PHA has any interest, "direct or indirect." (Gov.Ex. 1, § 515, p. 64). Gallup contends that the trial court committed plain error by not instructing the jury on the meaning of the language "any interest, direct or indirect," in the contract. This argument is evidently related to Gallup's assertion that the jury might have concluded that merely because Duke was his brother-in-law, Gallup had an indirect interest in the finder's fee. We have searched the record and can find no indication that Gallup requested such an instruction. In *United States v. Newman*, 733 F.2d 1395 (10th Cir.1984), we held that if a party does not request an instruction, the court's failure to give an instruction is not assailable on appeal, absent plain error. In *United States v. Coppola*, 486 F.2d 882 (10th Cir.1973), *cert. denied*, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974), we adopted the following definition of plain error: "[P]lain error is *'fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.'" *Id.* at 884 [citation omitted]. Here we detect no plain error and we will therefore not disturb the conviction on appeal.

### III.

■ With some difficulty, we glean from Gallup's third assignment of error that he is contending that the jury could have found either that Gallup was guilty of being the brother-in-law of someone who benefited from the purchase of KS1–23, which he argues would be an indirect interest pursuant to the Annual Contributions Contract, or that he was guilty of conspiring to split the finder's fee with Duke, which would constitute a direct interest under the contract. He cites many cases for the proposition that when a jury considers alternative theories of liability, a conviction must be reversed if either theory is an improper basis for conviction and punishment. This argument fails, since we hold that the nature of Gallup's interest in the finder's fee is irrelevant to the conspiracy charge.

The government's theory of the case was that Gallup and Duke agreed to split the finder's fee Duke was to receive from Mosier and Seelbinder, while Gallup was charged with securing HUD approval for financing the project. This would constitute a direct interest on Gallup's part. The evidence does support such a conclusion. Moreover, even if we assume *arguendo* that the jury found Gallup's interest to be indirect, in that he conspired only to ensure that Duke would receive the finder's fee, the law is settled that this, too, is a crime. In *United States v. Shoup*, 608 F.2d 950 (3rd Cir.1979), the court rejected an argument that the defendant expected no financial gain from the conspiracy:

There would be little justification for placing on the prosecution the burden of proving that each conspirator expected to benefit from the conspiracy. The agreement itself, along with other evidence of criminal or fraudulent purposes, demonstrates that the parties to it (1) manifested a disposition to criminal activity and (2) posed an enhanced danger to the community by their concerted, mutually enforcing actions. Therefore, the element of compensation is not necessary to guard against the danger that the innocent will become ensnared in the net of a conspiracy prosecution. Although an anticipated benefit may be evidence of an alleged co-conspirator's mens rea, we agree with the Ninth Circuit that benefit, or a 'stake in the venture" is not an element of § 371.

Thus, the cases Gallup cites in which it was impossible to determine whether the jury convicted on a valid theory of criminal liability are inapposite. Here, the jury found a conspiracy, which was criminal conduct regardless of the nature of Gallup's interest. Indeed, whether Gallup's interest was direct or indirect was irrelevant. Gallup was not "convicted of being Duke's brother-in-law." He was convicted, along with Duke, of conspiring to defraud the United States.

With respect to Count 2, Gallup does not raise the possibility that he was convicted on an invalid theory of criminal liability except obliquely. We hold that even if he had, his failure to request an instruction defining "any interest" in § 1012 waives any objections he might have on appeal, absent plain error. *United States v. Newman*, 733 F.2d at 1402. Moreover, our review of the evidence and the instructions to the jury reassures us that no plain error exists. We do not find error so fundamental or prejudicial that justice cannot have been done. We cannot say that there was no basis in the evidence for the conclusion that the defendants were guilty of both Counts 1 and 2, or that a jury could not find the defendants guilty beyond a reasonable doubt. We find no merit in the remainder of the defendant's argument on this point and decline to discuss definitions of family relationships provided in the Code of Federal Regulations and 18 U.S.C. § 208. They are not relevant to the instant case.

## IV.

Based on his misunderstanding of the nature of the conspiracy charge, Gallup contends that 18 U.S.C. § 371 is unconstitutionally vague as applied to his case. We need not reach the merits of this argument, since we have already held that whether Gallup's interest in KS1–23 was direct or indirect is irrelevant to the charge of conspiracy. We can likewise dispose of Gallup's claim that the court's instructions held him to a higher standard of conduct than that of federal government employees. Based as it is upon the notion that Gallup was convicted simply because he was Duke's brother-in-law, the contention has no merit.

## V.

Gallup avers there are several areas where the trial court erred in its instructions to the jury and in refusing to charge the jury as requested. For example, Gallup requested an instruction defining "induces or influences" as used in § 1012. He also requested an instruction that the jury could not find Gallup and Duke guilty of conspiracy unless they found an agreement to divide the finder's fee. Gallup criticizes the district court for giving a standard circumstantial evidence instruction. Finally, although Gallup did not request one, he avers that the district court erred in failing to give a "good faith" instruction.

It is well settled that the form of instructions is a matter for the discretion of the trial court and there is no requirement that the judge adopt the exact language of the requested instructions. *United States v. Newson*, 531 F.2d 979 (10th Cir.1976); *United States v. Waters*, 461 F.2d 248 (10th Cir.), *cert. denied*, 409 U.S. 880, 93 S.Ct. 207, 34 L.Ed.2d 134 (1972). The trial court is not bound to give instructions in the form and language requested, and if the instructions as given are correct and cover the issues of the case, the judgment will not be disturbed. *United States v. Newson, id.; Elbel v. United States*, 364 F.2d 127 (10th Cir.1966), *cert. denied*, 385 U.S. 1014, 386 U.S. 939, 87 S.Ct. 726, 87 S.Ct. 959, 17 L.Ed.2d 550, 17 L.Ed.2d 812 (1967). The instructions given in the instant case were correct and covered the issues raised by the evidence. Moreover, Gallup did not request a "good faith" instruction; we therefore find no error in the trial court's failure to give one. *United States v. Newman*, 733 F.2d 1395 at 1402.

## VI.

Gallup contends that because the evidence was largely circumstantial, there was insufficient evidence to convict him of conspiracy pursuant to 18 U.S.C. § 371. He argues that there are breaks in the inferential chain. We must view all the evidence in a light most favorable to the government to determine whether there is sufficient proof, direct and circumstantial, together with reasonable inferences to be drawn therefrom, from which a jury might find a defendant guilty beyond a reasonable doubt. *United States v. Twilligear*, 460 F.2d 79 at 81–82.

In *United States v. Galvan*, 693 F.2d 417 (5th Cir.1982), upon which Gallup relies, the

government's evidence consisted largely of records of long-distance telephone calls between the defendant's residence and another residence, from which the jury was asked to infer the existence of a criminal conspiracy. By contrast, in the instant case, there was ample circumstantial evidence of conspiracy: the cover letter from Mosier to Gallup, at Duke's request, describing the property; the secrecy with which Duke dealt with Mosier and Seelbinder; the payment of the finder's fee at a time and place other than that of the closing; Duke's request that the finder's fee be in cash; Duke's and Gallup's immediate departure for Las Vegas after the closing on KS1–23; and Duke's and Gallup's financial activities after the closing. This is by no means an exhaustive synopsis of the evidence. Moreover, there was direct evidence of the conspiracy in the form of Linda Lewis' testimony. This is no doubt unusual in a conspiracy case, since secrecy is the hallmark of a conspiracy. In any event, the jury evidently chose to believe Ms. Lewis, and they are the sole judges of a witness' credibility. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Nor is it for us to substitute our judgment for that of the jury. "Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collocation of circumstances' [citation omitted]." *Glasser, id.* at 80, 62 S.Ct. at 469. The jury's findings are entitled to great deference and will not be disturbed. In all matters involving a sufficiency of evidence question, to support a conviction the rule is well established that the evidence must be viewed in the light most favorable to the prosecution, and the jury verdict must be upheld if there is sufficient direct and circumstantial evidence, together with reasonably drawn inferences, to support the verdict. *United States v. Ramsdell*, 450 F.2d 130 (10th Cir.1971).

## VII.

■ Gallup alleges that the trial court erred in admitting testimony of Gallup's tax preparer, evidence of Gallup's rental property, Duke's 1980 income tax return, cross-examination of Gallup concerning the refusal of his supervisor to be interviewed by the government, and the court's refusal to let Gallup cross-examine the government's witness, Nichols, beyond a certain point.

We agree that the relevance of Gallup's Section B rental property was dubious. However, these matters are all within the discretion of the trial court. We find no abuse of that discretion, nor was admission of the disputed evidence clearly erroneous or prejudicial to the rights of either defendant. *See, Glasser v. United States*, 315 U.S. 60 at 81–83, 62 S.Ct. 457 at 470–471; *United States v. Montgomery*, 582 F.2d 514, 519 (10th Cir.1978). We also note that Gallup did not object to the government's cross-examination of him concerning his supervisor's refusal to be interviewed. He has consequently failed to preserve the issue for review.

## VIII.

■ Gallup contends for the first time on appeal that there was insufficient evidence of an overt act in furtherance of the conspiracy under § 371, occurring within the statutory period of limitation. This contention was not raised during trial, nor did Gallup request an instruction on the statute of limitations. It is well settled that the statute of limitations is an affirmative defense which is waived unless raised at trial. *Biddinger v. Commissioner of Police*, 245 U.S. 128, 135, 38 S.Ct. 41, 43, 62 L.Ed. 193 (1917); *United States v. Minor*, 756 F.2d 731 (9th Cir.1985). Inasmuch as Gallup and Duke failed to raise the defense, we need not consider it on its merits. We do observe, however, that the evidence supported the government's argument that since the payoff came within the five-year statute, the charge was not time-barred. *See, United States v. Walker*, 653 F.2d 1343 (9th Cir.1981).

## IX.

The last issue in this appeal, raised by both Gallup and Duke, concerns the restitu-

tion condition contained in the district court's judgment and probation order. After the jury found both defendants guilty of both counts, the district court sentenced Gallup and Duke to prison terms for conspiring to defraud the United States under Count 1. For Count 2, influencing HUD to enter into a contract and failing to disclose their interests therein, the district court sentenced both defendants to a five-year probation period with the special condition that each defendant make restitution payments to HUD in the amount of $45,592.

The defendants argue that the restitution condition under Count 2 is erroneous. They point out that under 18 U.S.C. § 3651, the sentencing statute in effect at the time of the offense, the district court may only order that restitution be paid "to an aggrieved party for actual damages or loss caused by the events for which conviction was had...." The defendants contend that HUD was not an aggrieved party since it was established at trial that HUD was not cheated or defrauded out of any money. The defendants point out that HUD did not pay a higher price for the property as a result of the finder's fee and, in fact, that HUD found the proposed price for the property to be fair and acceptable.

The defendants' argument rests upon the notion that to qualify as an "aggrieved party suffering actual damage or loss," HUD must show that it sustained a financial injury. Yet the defendants cite no authority, nor can we find any, specifically limiting restitution or reparation awards under 18 U.S.C. § 3651 to situations in which financial injury is demonstrated. Given the unique circumstances of the instant case, we are compelled to recognize that in certain situations, damage or loss may be suffered in other ways and that it was within the district court's discretion to conclude that HUD was an aggrieved party even though it did not lose any money.

As a practical matter, HUD was damaged when it was fraudulently deceived into violating its own operating procedures by entering into a contract that secretly benefited an employee of the Kansas Housing Authority. While the terms of the purchase were acceptable to HUD, such a secret interest was offensive to HUD policy and violated federal law. Testimony at trial indicated that HUD would not have entered the agreement had it known of Gallup's interest. Indeed, Gallup and Duke's action constituted a breach of the Annual Contributions Contract between the Kansas Housing Authority and HUD since that agreement provided that none of the personnel of the Housing Authority could have "any interest, direct or indirect," in any property purchases.

In addition to these consequences, the actions of the defendants damaged HUD in an even more fundamental way. Any government agency, including HUD, that is vested with the public's trust and charged with serving the public's interest is grievously compromised when its employees and agents abuse their position to promote their own economic gain. The fact that no monetary loss occurred on this particular occasion in no way diminishes the damage to the principles of honesty and integrity that must be the standard for all government enterprises.

In the final analysis, it is really the public that is injured by activities such as those in which the defendants engaged. In *United States v. Lynch*, 699 F.2d 839, 845 (7th Cir.1982), the court held that Cook County could stand in the shoes of local property owners, the real victims of the defendant's tax evasion, and accept funds in their trust and behalf. As a tax supported agency, HUD may likewise be recognized as standing in place of the public to receive restitution on its behalf.

The defendants rely on the case of *United States v. Prescon Corp.*, 695 F.2d 1236 (10th Cir.1982), for the proposition that under 18 U.S.C. § 3651, a court may not order the payment of restitution to third parties not aggrieved by the crime in question. In that case, we reversed a district court's order requiring the defendant corporations, which had committed antitrust and mail fraud violations, to pay restitution to the Department of Probation for distribution to

"community programs ... aimed at decreasing crime...." *Id.*, 1238.

We observe at the outset, however, that the situation in *Prescon* is not the same as the one now before us. In this case, the district court is not ordering that restitution payments be made to third parties unconnected with the offense in question. Unlike the anonymous "community programs" in *Prescon*, HUD was intimately and contractually involved in the transaction that was at the heart of the offense charged.

Also, we recognized in *Prescon* that under 18 U.S.C. § 3651, the sentencing judge "'has a broad power to impose conditions designed to serve the accused and the community. The only limitation is that the condition have a reasonable relationship to the treatment of the accused and the protection of the public.'" *Id.*, 1242 (citation omitted). Applying this standard to the case at bar, we conclude that the district court did not err in ordering the defendants to pay restitution to HUD. Between them, the defendants profited illegally to the tune of $91,184 by inducing HUD to enter a contract in which the defendants had a secret interest. The judge's order denying the defendants the fruit of their illegal activities bears a reasonable relationship to the treatment and punishment of the defendants. Likewise, by ordering that the reparations be paid to HUD, the government agency that was the victim of breach of contract and fraud and whose procedures were compromised in violation of federal law, the district court's order bears a reasonable relationship to the protection of the public.

We recognize, as Gallup points out, that an order for restitution cannot exceed the amount of the damage or loss. *United States v. Franks*, 723 F.2d 1482 (10th Cir. 1983), *cert. denied*, 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984). Fixing a dollar amount for damage that is not directly monetary is never easy. The district court seems to have reasoned that HUD was injured when the defendants received an illegal finder's fee and, thus, that the extent of HUD's damage could be measured by the amount of money Gallup and Duke received. Since it was established at trial that defendants received a finder's fee of $91,184, we cannot conclude that the district court abused its discretion by ordering restitution and reparation in that amount.

■ Gallup also argues that the amount of restitution may not be greater than the amount of damage or loss alleged in the indictment. We note that the indictment for Count 2 alleges that the defendants received a finder's fee "in the *approximate* amount of $85,000 ..." (emphasis added) though the larger amount of $91,184 was proven at trial. We have previously observed that there is a division among the circuits as to whether restitution under the Federal Probation Act is in fact limited to the amount charged in the indictment. *United States of America v. Fred Hill*, 798 F.2d 402, 405 n. 4 (10th cir. 1986). Many courts are reluctant to permit reparations and restitution in amounts greater than those alleged in the indictments where defendants have pleaded guilty as part of an agreement. *See discussion, United States v. Hawthorne*, 806 F.2d 493 (3rd Cir.1986). A majority of courts, however, seem to reject such a fixed, arbitrary limit where an amount larger than the amount stated in the indictment is established by proof at trial, or by some other judicial determination or consensual means. *See, United States v. Gering*, 716 F.2d 615, 625 (9th Cir.1983), and *United States v. Lemire*, 720 F.2d 1327, 1353 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984). The instant case falls into this second category of cases. This being so, and given the narrow discrepancy between the amount alleged in the indictment and amount proven, the use of the word "approximate" in the indictment, and the fact that the defendants were given notice through the trial process that the government intended to prove a higher amount, we conclude that the defendants were not prejudiced by the figure in the indictment and hold that the district court did not abuse its discretion by ordering payment of restitution for the higher figure proven at trial.

Gallup argues, finally, that the government was only able to prove that he had received $20,000 of the finder's fee. We disagree but, in any case, we note the court's holding in *United States v. Lynch*, 699 F.2d 839, 846 (7th Cir.1983), that "the measure of restitution damages is 'based ... on the loss to the victim of the fraud,' not the benefit to the perpetrator of the fraud." (citation omitted.) Thus, the possibility that Gallup may not have received an even split of the illegal finder's fee does not, by itself, prevent the district court from ordering him to pay an even split of the restitution.

AFFIRMED.