**Julio PAZ, Plaintiff–Appellant,**

**Utah State Insurance Fund, Plaintiff,**

v.

**CARMAN INDUSTRIES,
Defendant–Appellee.**

**Standard Oil Company of California,
Ford, Bacon & Davis, and W.C.
Grant, Defendants.**

**No. 86–2101.**

United States Court of Appeals,
Tenth Circuit.

Nov. 1, 1988.

Jackson Howard (Danielle Eyer Davis of Howard, Lewis & Petersen, with him on the brief), Provo, Utah, for plaintiff-appellant.

Gary B. Ferguson and Gary L. Johnson of Richards, Brandt, Miller & Nelson, Salt Lake City, Utah, for defendant-appellee.

Before LOGAN, MOORE, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

On March 7, 1982, Julio Paz, an employee of American Gilsonite Company (the Company), was severely burned in an explosion at the Company's gilsonite processing plant in Bonanza, Utah.[1] At the time of the explosion Paz was acting in the course and

---

**1.** Gilsonite is a mineral and a product. In its mineral form gilsonite is a flammable hydrocar-

scope of his employment with the Company.

On March 18, 1983, Paz brought suit in the United States District Court for the District of Utah seeking damages for the injuries sustained in the explosion. Under local Utah law, Paz received worker's compensation benefits, and the Utah State Insurance Fund was joined as a party plaintiff. Named as defendants were Ford, Bacon & Davis, a New York corporation; Carman Industries, an Indiana corporation; and W.C. Grant, also an Indiana corporation. Standard Oil of California, a Delaware corporation, was later added as a defendant. Jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332.

The original complaint set forth three causes of action based on negligence, express and implied warranties, and strict products liability. Each of the four defendants filed a separate answer denying generally, and specifically, liability.

In the pretrial order, it was agreed that in 1978 the Company entered into a written contract with Ford, Bacon & Davis for construction of the processing plant, that Ford, Bacon & Davis entered into a subcontract with Carman Industries for a part of the work, and that Carman entered into a subcontract with W.C. Grant for a part of its work.[2] It was further agreed that the Company also entered into a "technical assistance agreement" with Standard Oil of California.

A short time prior to trial, Paz entered into an out-of-court settlement with all defendants except Carman, whereby Paz dismissed his claims against all defendants except Carman in exchange for $1,000,000.

Paz's claim against Carman proceeded to trial before a jury and was based solely on Paz's third cause of action, i.e., strict products liability. An eight-day trial ended with both Paz and Carman moving for a directed verdict. Those motions were denied and the case was submitted to the jury with a series of special interrogatories, the first interrogatory reading as follows:

1. Was the fluid bed dryer or accessories manufactured by defendant Carman Industries in a defective condition?

The jury, after 16 hours of deliberation, answered the above interrogatory, "No." Based on the trial court's instructions, the jury was not required to answer the remaining interrogatories. Then, based on the "No" answer by the jury, the district court entered judgment in favor of Carman. Paz subsequently filed a motion for judgment n.o.v. or, in the alternative, for a new trial, which motion was denied in its entirety. Paz appeals the judgment thus entered. We affirm.

## I. Motion for Judgment N.O.V. or New Trial

Paz argues that the district court erred in denying his motion for judgment n.o.v.

---

bon, taking the form of a moist lumpy black ore. In its processed form, as a product, gilsonite is a dry powder with a variety of uses in foundry aids.

The gilsonite processing plant in Utah is the only plant in the world specifically built for the purpose of drying gilsonite. The gilsonite is broken into small pieces as it is dropped onto a vibrating dryer bed. At the same time, forced hot air is pushed through small perforations in the dryer bed. The heated air for this system is produced by two direct fire furnaces, which force the air through a duct system to reach the dryer bed. Because the raw ore is being shaken and heated, it powderizes. In its powderized form the gilsonite is then collected, shipped and sold.

**2.** The American Gilsonite Company is engaged in the business of mining, processing and selling Gilsonite. On May 19, 1978, American Gilsonite Company entered into a written construction contract with Ford, Bacon & Davis, a construc-

tion company with offices in New York, N.Y., to engineer, design and construct a Gilsonite plant at Bonanza, Utah. Ford, Bacon & Davis then subcontracted with Carman Industries, whose manufacturing plant is in Jeffersonville, Indiana, to provide the main dryer, the furnaces, some duct work and a few accessories. Carman Industries was provided with the "Y" design specification for the duct work, the dryer building specifications, and the specifications for the direct fire furnaces. Carman Industries then subcontracted with W.C. Grant, whose plant is in Fort Wayne, Indiana, to supply it with the two furnaces. After the completion of its work, Carman then shipped the duct work, dryer unit and furnaces to Bonanza, Utah, where Ford, Bacon & Davis incorporated these parts into the plant. Carman's representatives did not visit the plant site until after the entire plant was built.

or new trial. Based on the record, we find no error.

Jury verdicts are not to be lightly overturned as courts recognize that a "traditional sanctity" attaches to the solemn verdict of a jury. *Mid–West Underground Storage, Inc. v. Porter,* 717 F.2d 493, 501 (10th Cir.1983). In reviewing a district court's denial of a motion for judgment n.o.v., we may find error only when that evidence points but one way, i.e., in favor of the mover and is susceptible of no reasonable inferences supportive of the nonmover's position. Although a scintilla of evidence sustaining the position of the nonmover is not enough, an appellate court must affirm if there was evidence before the jury upon which it could properly find against the mover. *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1547 (10th Cir.1988); *see also Joyce v. Atlantic Richfield Co.,* 651 F.2d 676, 680 (10th 1981).

A motion for a new trial, on the other hand, is committed to the informed discretion of the district court which is generally in a better position to evaluate a claim of jury confusion. In reviewing the denial by the district court of a motion for a new trial, we do not make a *de novo* determination of the sufficiency or weight of the evidence. Appellate inquiry is limited to whether the district court's refusal to set aside the jury's verdict and order a new trial constitutes a manifest abuse of discretion. *Karns v. Emerson Electric Co.,* 817 F.2d 1452, 1456 (10th Cir.1987) (citing *Brown v. McGraw–Edison Co.,* 736 F.2d 609, 616 (10th Cir.1984); *Ryder v. City of Topeka,* 814 F.2d 1412, 1424 (10th Cir. 1987).

■ In our view, the record supports the jury's answer to special Interrogatory No. 1 that the fluid dryer and accessories manufactured by Carman were not in a defective condition when given to the Company and its prime contractor, Ford, Bacon & Davis. There was conflicting testimony on the question of defect and a jury's choice "between two permissible views of the evidence" does not mean that its verdict is vulnerable to post-trial motions. *Rasmussen Drilling v. Kerr–McGee Nuclear Corp.,* 571 F.2d 1144, 1148–49 (10th Cir.), *cert. denied* 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978).

In support of our conclusion that there was conflicting testimony on the question of defect, we refer, by way of illustration, to the testimony of Dr. Geoffrey Germane, an expert witness called by Paz, and David Lee, an expert witness called by Carman. Dr. Germane testified, *inter alia,* that there were eight defects in the drying system manufactured by Carman for the Company and its representative, Ford, Bacon & Davis. Carman's expert witness Lee, however, testified, that the dryer and accessories manufactured by Carman were not in a defective and unreasonably dangerous condition when delivered to the Company and Ford, Bacon & Davis. Under questioning of counsel on direct examination, Lee disputed each of the "defects" perceived by Dr. Germane. Counsel for Paz suggests that Dr. Germane was better qualified than Lee. Counsel for Carman, in turn, claims to have demolished Dr. Germane's testimony by his cross-examination. Both claims, of course, bear on witness credibility, a matter for the fact finder, not appellate courts. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Gallup,* 812 F.2d 1271, 1280 (10th Cir.1987).

We find no error in the trial court's denial of Paz's motion for judgment n.o.v., nor did the trial court abuse its discretion in denying Paz's alternative request for a new trial. Counsel's suggestion that the jury was confused and that such confusion resulted in speculation and conjecture is just that—a suggestion. The trial lasted eight days and the jury deliberated for some sixteen hours. There is nothing in the record to support the claim of jury confusion, and, as above indicated, its verdict finds support in the record.

## II. *Farron Hill*

Ford, Bacon & Davis, a national engineering and construction firm, had the prime contract with the Company to design and construct the processing plant in question. Farron Hill was an employee of

Ford, Bacon & Davis and was the project manager at the job site in Bonanza, Utah. In the pretrial order, both Paz and Carman listed Hill as a witness. Paz called Hill as a witness in his case-in-chief. Carman later called Hill as one of its witnesses. Before Hill answered any questions for Carman, however, counsel for Paz made the following objection:

> I presume that we're going into an area of testimony that we didn't handle on direct examination for the plaintiff. Otherwise, if it's something new, it's not a new area, and I would object on the basis that it's inappropriate examination.

The district court, in effect, overruled that objection with the comment: "Well, let's see where Mr. Ferguson [Carman's attorney] goes, Mr. Howard [Paz's attorney], and then object as we go along, if you want to."

When Carman's counsel inquired of Hill concerning "modifications made to the processing plant after Ford, Bacon & Davis finished working on the plant and American Gilsonite had taken over," objection was made by Paz's counsel. This objection was overruled and Paz's counsel at that juncture indicated "surprise" that Carman's counsel was calling Hill as its final witness. Paz's counsel stated that, not anticipating that Carman would call Hill and anticipating that Carman's last witness would be someone other than Hill, their expert witnesses had been excused and such would hamper counsel in his cross-examination of Hill and foreclose possible rebuttal witnesses. This objection was also overruled, and Hill then testified concerning a change made by the Company to the drying unit after Ford, Bacon & Davis had completed the job and turned the plant over to the Company. Counsel for Paz cross-examined Hill briefly, and when Carman rested its case, counsel indicated there would be no rebuttal.

On appeal, counsel argues that the trial court erred in allowing Hill to testify to anything, and that it was particularized error to allow Hill to testify concerning alterations or modifications made by the Company after Ford, Bacon and Davis had completed the job and turned the plant over to the company.

We find no error in the trial court's overruling Paz's request that Hill be foreclosed from offering any testimony. Carman had identified Hill in the pretrial order as one of its witnesses. There may have been a misunderstanding between counsel concerning Carman's calling of Hill as a witness, but, under the described circumstances, the trial court did not abuse its discretion in permitting Hill to testify. When Hill completed his testimony, there was no request that there be a continuance to allow Paz to counter Hill's testimony. We note that when the trial court asked Paz's counsel if there would be any rebuttal, he replied that there would be "no rebuttal."

The objection to Hill's testimony concerning modifications made by the Company after it took over the plant from Ford, Bacon & Davis is also without merit. The pretrial order listed alteration and modification as one of the issues in the case. Indeed, the district court instructed the jury that one essential element of Paz's claim was "that no substantial change had been made in said fluid bed dryer or accessaries from the time it left the possession of the defendant Carman Industries to the time of the accident." On appeal, no challenge is made to that instruction. Accordingly, we find no error in the district court's ruling regarding Hill's testimony concerning modifications made by the Company.

Our study of the entire record leaves us with the firm conviction that this was a well-tried case by experienced counsel under proper instructions. Thus, the jury's verdict reached after 16 hours of deliberation should not be disturbed.

JUDGMENT AFFIRMED.