UNITED STATES of America, Plaintiff–Appellee,

v.

Douglas HAUCK, Defendant–Appellant.

No. 91–1437.

United States Court of Appeals, Tenth Circuit.

Nov. 17, 1992.

John M. Richilano, Denver, Colo., for defendant-appellant.

John M. Haried, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty., with him on the brief), Denver, Colo., for plaintiff-appellee.

Before BRORBY, McWILLIAMS and KELLY, Circuit Judges.

PAUL KELLY, Jr., Circuit Judge.

### Background

Defendant-appellant Douglas Hauck was a licensed real estate agent in Colorado. Together with Daniel Hoover and Richard Jorgenson, the principals of an organization called RAM Marketing, Mr. Hauck began to utilize several "no-money-down" schemes to sell properties, including "coin-vesting" with buyers who could not qualify for loans. Mr. Hauck supplied downpay-

ment money by collecting unusually large commissions from sellers, i.e. 20.5% to 22.-5%. After a property had been purchased and its mortgage insured by HUD, Mr. Hauck would transfer his interest by way of a quitclaim deed to the coinvestor.

The investors attempted to find tenants for the property who were interested in an equity sharing arrangement. "Equity sharing" allowed a tenant to live in the house, make the mortgage payments and attain some shared equity with the investor-purchaser. Investors often submitted bogus leases to HUD because submitting the equity sharing agreements increased approval time or because HUD rejected such arrangements. Sometime after October 1985, Mr. Hauck became disgruntled with his share of the profits and did no further business with RAM Marketing or its principals.

The government alleged that the coconspirators submitted false information to HUD in order to qualify for loans. To show an alternative source for the downpayment funds, a fake letter from another mortgage company was submitted, purportedly confirming a second mortgage on the residence of the investor. False leases were submitted to show another source of income. Other loan application information was falsified, including valuation of one investor's car, statements of salary and verifications of employment and of available funds.

On November 29, 1990, Mr. Hauck was indicted along with Mr. Hoover, Mr. Jorgenson and Guy de Chadenedes for conspiring to make false statements to obtain HUD mortgage insurance, in violation of 18 U.S.C. § 1010, and to defraud the United States, in violation of 18 U.S.C. § 371. All pled guilty, save Mr. Hauck, who was convicted after a jury trial.

Mr. Hauck appeals his conviction claiming that (1) evidence of any overt act within the applicable statute of limitations period was insufficient to support the conviction; (2) the general verdict may have been based upon an erroneous view of the law; and (3) the indictment was duplicitous. We find these claims without merit and affirm.

Our jurisdiction arises under 28 U.S.C. § 1291.

## Discussion

### I. Statute of Limitations

■ To satisfy the statute of limitations, the prosecution must show that the conspiracy continued to exist five years prior to the indictment, returned on November 29, 1990, and that "at least one overt act in furtherance of the conspiratorial agreement was performed within that period." *United States v. Pinto*, 838 F.2d 426, 435 (10th Cir.1988) (citing *Gruenwald v. United States*, 353 U.S. 391, 397, 77 S.Ct. 963, 970, 1 L.Ed.2d 931 (1957)). Mr. Hauck argues that the government failed to prove any overt act after November 29, 1985. Even if one was proven, Mr. Hauck suggests that, because such overt act was not alleged in the indictment, a fatal variance exists between the indictment and the proof. We need not reach the question of whether the particular overt act proven may be one that was not alleged because we conclude that one of the alleged overt acts after November 29, 1985 was proven.

The indictment alleged several overt acts, including the purchase of several properties by either Mr. Hauck or one of his coconspirators. Mr. Weber, a coconspirator, testified that he continued to purchase certain properties, specified in the indictment, through "the fall of '86, September or October, in that period." VI R. 429. Mr. Weber confirmed the purchase of the following properties during his testimony:

| Property | Date |
|---|---|
| 3483 Atlantic Drive | 12/26/85 |
| 3495 Atlantic Drive | 12/26/85 |
| 3477 Atlantic Drive | 01/06/86 |
| 950 Acapulco | 01/07/86 |

VI R. 428–29.

■ Sufficient evidence to support a conviction exists if a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61

L.Ed.2d 560 (1979). A similar standard of review applies when a defendant challenges the finding of an overt act within the limitations period. *United States v. Scop*, 846 F.2d 135, 138–39 (2d Cir.1988), *modified on reh'g in part on other grounds*, 856 F.2d 5 (1988). The jury was instructed regarding the necessity of finding an overt act within the statute of limitations.[1]

The evidence at trial tended to show that Mr. Hauck and his coconspirators at RAM Marketing did no further business together after November 1985. However, Mr. Hauck concedes that he did not take the affirmative steps necessary to withdraw from the conspiracy. Aplt. Reply Brief at 5. Therefore, the needed overt act within the statute of limitations may be performed by any of the coconspirators. *United States v. Lash*, 937 F.2d 1077, 1083–84 (6th Cir.1991). Although the bulk of Mr. Hauck's participation did occur prior to November 1985, the evidence of continued property purchases by coconspirators was "sufficient to permit a rational jury to conclude that the conspiracy and substantive scheme to defraud continued." *Scop*, 846 F.2d at 139. *See also United States v. Gallup*, 812 F.2d 1271, 1280 (10th Cir. 1987).

## II. Erroneous View of the Law

▬ Mr. Hauck contends that the general verdict could have been based on an erroneous view of the law and must therefore be reversed. He relies heavily on the HUD Handbook, which he asserts "expressly permitted the use of the real estate commission for the downpayment." Aplt. Brief at 22. During trial, Mr. Hauck called an expert who testified concerning the policies and practices of HUD. In his opinion, the HUD Handbook 4155.1, ¶ 3–28(f) permitted the unqualified use of real estate commissions for downpayments. VIII R.

814–15. This testimony was relevant to the issue of Mr. Hauck's alleged fraudulent intent. *See United States v. Barsanti*, 943 F.2d 428, 432–33 (4th Cir.) (expert testimony interpreting a HUD certification would be admissible to establish that "the certification (c) statements made by appellants would not have been false"), *cert. denied*, —— U.S. ——, 112 S.Ct. 1474, 117 L.Ed.2d 618 (1991). The district court carefully limited the testimony to relate to the HUD Handbook, which the court recognized is not law. VIII R. 793. *See Burroughs v. Hills*, 741 F.2d 1525, 1529 (7th Cir.1984) (HUD Handbook "intended for internal use for the information and guidance of HUD officials" and " 'has no binding force' ") (quoting *Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1439 (Fed.Cir.1984)), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985). Mr. Hauck's defense, based on the HUD Handbook, was factual. Defendant made no pretrial motion to challenge the indictment, nor did he challenge the jury instructions relating to his Handbook defense. *See* Fed.R.Crim.P. 12(b)(2), 30.

On appeal, Mr. Hauck again fails to raise legal questions related to the indictment, focusing instead on the Handbook and whether it allows the use of commissions for downpayment funds. Although Mr. Hauck mentions an erroneous view of the law, the substance of the argument relates only to the Handbook. Presented as a factual issue, the evidence is reviewed in a light most favorable to the government. Unless no reasonable jury could have concluded that Mr. Hauck's use of commission money furthered the conspirator's efforts to defraud the government, we will not reverse. After a review of the entire record, "we cannot say the facts of this case are insufficient to establish a dishonest impairment of a government function." *United States v. Murphy*, 957 F.2d 550,

---

1. The jury was instructed:

   Now, it is an affirmative defense to the charge of conspiracy that the government failed to prove an overt act, as alleged in the indictment, within the statute of limitation period. The statute of limitations in this case is five years. The indictment was returned on November 29, 1990, therefore, in order to return a verdict of guilty, *you must find that the government has proven beyond a reasonable doubt that at least one of the overt acts alleged in the indictment occurred after November 29, 1985.*

   IX R. 978 (emphasis added).

554 (8th Cir.1992). Certainly, "[c]onspiracies to defraud the United States under section 371 can take many forms." *Id.* Here, Mr. Hauck's intent to defraud may be inferred from the facts adduced at trial, despite expert testimony regarding what may be permissible according to the Handbook.

■ In any event, absent plain error, failure to object or request clarifying instructions at trial waives the issue of an invalid theory of criminal liability on review. *Gallup*, 812 F.2d at 1279. We find no plain error. It is well settled that "the 'illegal' purpose need not involve a criminal violation." *United States v. Tuohey*, 867 F.2d 534, 537 (9th Cir.1989) (citing *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966)). "Thus, the 'defraud' part of section 371 criminalizes *any* willful impairment of a legitimate function of government, whether or not the improper acts or objective are criminal under another statute." *Id.* When Mr. Hauck argues that he has committed no crime, he makes the same error as the defendant in *Gallup*—failing to acknowledge that "18 U.S.C. § 371 defines a substantive crime" in itself. *Gallup*, 812 F.2d at 1276. In *Gallup*, we noted that the crime was the compromise of HUD's interest "in having its projects 'administered honestly and efficiently and without corruption and waste.'" *Id.* (quoting *United States v. Conover*, 772 F.2d 765, 771 (11th Cir.1985), *aff'd in part, remanded in part*, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987)).

### III. Duplicity of the Indictment

■ Finally, the appellant contends that the conspiracy charge actually charged two separate offenses, one under the "commit any offense" prong and another under the "defraud the government" prong of 18 U.S.C. § 371.[2] We find the discussion in *United States v. Smith*, 891 F.2d 703, 712–13 (9th Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990) instructive:

> [T]he two clauses should be interpreted to establish alternative means of commission, not separate offenses.
>
> .    .    .    .    .
>
> [W]here conspiracy is the charge, the established rule is that a charge of conspiracy to commit more than one offense may be included in a single count without violating the general rule against duplicity. So here, the defendants were properly charged with a single continuing agreement to defraud the United States and to commit the substantive offense.

*See United States v. Levine*, 750 F.Supp. 1433, 1436–67 (D.Colo.1990), *aff'd*, 968 F.2d 22 (10th Cir.1992). Certainly, it is permissible to charge a single offense but specify alternative means to commit the offense. *See Braverman v. United States*, 317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942); *United States v. Sullivan*, 919 F.2d 1403, 1435 n. 53 (10th Cir.1990), *cert. denied*, —— U.S. ——, 113 S.Ct. 285, 121 L.Ed.2d 211 (1992). Likewise, the charge against Mr. Hauck was essentially his agreement with others to both defraud the United States and to commit other substantive offenses.

**2.** Specifically, the conspiracy count read, in pertinent part, as follows:

11. From on or about September 1, 1985 and continuing thereafter until on or about March 4, 1987, ... defendants DANIEL HOOVER, RICHARD JORGENSON, GUY DECHADENEDES, and DOUGLAS HAUCK did willfully, unlawfully, and knowingly combine, conspire, confederate and agree together and with others ... to commit offenses against the United States and to defraud the United States and the FHA/HUD. More particularly, defendants ... did combine, conspire, confederate, and agree together and with each other:

A. to make, pass, utter, and publish statements, knowing the same to be false, and to alter, forge, and counterfeit instruments, papers, and documents, knowing the same to be altered, forged, and counterfeited, all for the purpose of obtaining mortgage loans ... with the intent that such loans would be offered to and accepted by the FHA/HUD for insurance, and for the purpose of influencing the actions of FHA/HUD, in violation of Title 18, United States Code, Section 1010; and

B. to defraud the United States and its department and agency of their lawful right to conduct their business and affairs free from deceit, fraud, misrepresentation, and theft ... in violation of Title 18, United States Code, Section 371.

For the foregoing reasons, the conviction is AFFIRMED.